194 N.J. Super. 381 (1983)
476 A.2d 1273
THOMAS A. LICCIARDI AND PAUL MANNERZ, PLAINTIFFS,
v.
PATRICK O. PASCARELLA AND JOANNE M. PASCARELLA, HIS WIFE, BELL EXTERMINATORS (DEFENDANTS ON COUNTERCLAIM), DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided October 20, 1983.
*382 Jeffrey R. Grow for plaintiffs.
Edward F. Seavers, Jr. for defendants.
MacKENZIE, J.S.C.
In McDonald v. Mianecki, 79 N.J. 275 (1979), the Supreme Court did not have to decide whether an implied warranty of workmanship and habitability should extend to the sale of a previously occupied residence.[1] This court was required at trial to decide that issue. For reasons hereafter expressed, there is at least one factual setting when the warranty applies.
*383 In 1979 Thomas Licciardi and Paul Mannerz (plaintiffs) purchased for $19,500[2] a dilapidated one-family home at 61 Glenwood Avenue in the Lake Hiawatha section of the Township of Parsippany-Troy Hills. Erected as a summer bungalow some 50 years ago, this house had been winterized by subsequent owners. Lack of maintenance and repair over the years, however, caused the owner who had sold the bungalow to the plaintiffs to fear that the building "was falling down around her."
Plaintiffs, as partners, were engaged in the business of buying run-down houses, making substantial alterations and improvements, and then reselling the property at a profit. This was their intention with respect to the premises in question. Both were particularly qualified to buy, repair and resell realty as Licciardi is licensed as a New Jersey real estate broker and Mannerz as a licensed New Jersey architect.
Reconstruction of this house entailed the almost complete gutting of the interior and the making of substantial repairs and renovations, both on the interior and exterior. New electrical, heating and plumbing facilities were installed; a new roof was put on, siding shingles were hung; new flooring was laid; the bathroom was completely redone; all the kitchen appliances were replaced; the fireplace was rebuilt with new flashings added; gaps and cracks in the foundation walls were filled; sheetrock was removed and replaced; a concrete "rat slab" was poured after the floor had been opened to expose the bare earth; all new insulation was hung; the crawl space was fully insulated; all new carpets were laid; and some, but not all, of the floor beams were replaced. Plaintiffs, in essence, built a new house within the shell of the old and even rebuilt part of the shell.
*384 After two years of reconstruction, the end product was a small, attractive home which the plaintiffs then placed on the market. Mr. & Mrs. Pascarella, defendants in this action, after twice looking around the property in a cursory fashion, decided to purchase their first home. A realtor's form contract was drawn by Licciardi and signed by the parties in March 1980. The purchase price was $53,900. In July 1980, at the closing of title, the Pascarellas were $3,600 short of the full purchase price. Plaintiffs agreed to accept their promissory note in that amount, payable in one year with 12% interest. The note was executed by the Pascarellas in the presence of their attorney.
In April 1981, the Pascarellas began construction of an addition to their home. During the course of this work, a substantial infestation of powder post beetles was disclosed in the floor joists and on the sill plate.[3] According to a licensed professional engineer who was later employed by the Pascarellas, the infestation in these weight-supporting members was so pervasive that it rendered the house structually unsound.
As a result of this disclosure, the Pascarellas refused to pay the note when it fell due in July 1981. Plaintiffs then instituted this suit on the note. The Pascarellas answered by denying liability and counterclaiming for damages, alleging breach of express warranty. On the eve of trial, defendants were allowed to amend the counterclaim by adding counts alleging breach of implied warranty of habitability and violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.
At trial, plaintiffs proved the note. Defendants then produced testimony from the engineer, an excavator, a mason, a real estate salesperson, and two experts in the field of the identification and treatment of wood-destroying insects. The evidence could fairly be characterized as supporting the defendants' *385 contention that the infestation by these beetles was long-standing, extending back at least eight to ten years, and was so extensive as to undermine the structural integrity of the house. According to the witnesses for the Pascarellas, no one who had worked under the floor could have missed such obvious and peculiar evidence of insect infestation.
At the close of the Pascarellas' proofs, a motion by plaintiffs to dismiss the implied warranty of habitability count was denied. A reasonable jury could have concluded that plaintiffs knew of and concealed from the Pascarellas the unsound structural condition of the house, as well as the nature and extent of infestation. In addition, a jury could have found that a reasonable inspection by the Pascarellas would not have disclosed the latent defects because the areas of infestation were not subject to viewing.
In defense of the counterclaim, each plaintiff denied knowledge or any indication of infestation, as did the general contractor on their reconstruction project. Ultimately, the jury returned a verdict adverse to defendants on this count of the counterclaim. Nevertheless, this opinion has been written to expand upon the reasons given orally at trial for submitting the issue to a jury.
The starting point for analysis is McDonald v. Mianecki, supra. McDonald was a warranty action against a single family vendor-builder for lack of potable water. The Court affirmed the Appellate Division opinion, 159 N.J. Super. 1 (App. Div. 1978), which held that the doctrine of implied warranty of habitability is applicable to the construction of a house by a builder who was not a mass-developer. The defense of caveat emptor was abolished.
The McDonald doctrine has been expanded by subsequent decisional authority. In Hodgson v. Chin, 168 N.J. Super. 549, 555 (App.Div. 1979), the implied warranty of habitability was extended to the sale of a newly-constructed commercial building, which contained two apartment units, by a "typical builder-seller" *386 to "small business persons." A subsequent (i.e., not original) purchaser was permitted to sue the builder-vendor of a new home for damages arising out of the breach of an implied warranty of habitability. Hermes v. Staiano, 181 N.J. Super. 424 (Law Div. 1981). The direction that this body of law has taken is clear.[4]
The same reasons which have led to the development and expansion of the warranty of habitability in the case of a builder-vendor of a new structure are similarly applicable to a rebuilder-seller of a used, but fully renovated home.[5] The primary purpose of the transaction is to provide the purchaser with a habitable dwelling. The rebuilder holds himself out as an expert in such reconstruction. The prospective purchaser is forced to a large extent to rely upon the skill of the rebuilder as he is precluded from making a thorough inspection of the completed house. Not only is there the expense of paying an expert to inspect, but there is the unfamiliarity of the purchaser with the construction of a building. In any event, such defects are often, as here, hidden from view, which renders inspection practically impossible. Under such circumstances, the purchaser *387 is placed in such an uneven position with respect to discovering latent defects as to be at the mercy of the rebuilder-reseller.
In allowing the jury to consider the allegation of breach of an implied warranty of habitability, this court recognizes a further extension of the McDonald rule. To summarize, where an existing home is so substantially reconstructed by a rebuilder that the end product, when placed on the market, is the functional equivalent of a new house, then an implied warranty runs from the reseller to the purchaser who buys in reliance on the structure being fit for intended residential purpose. In such a situation, the status of the rebuilder-reseller is tantamount to that of a builder-vendor of a new house. Likewise, the purchaser of a rebuilt home, which had been previously occupied, stands in the same position as would the buyer of a new house.
Thus, latent defects in the structure of a house which have been effectively concealed by the reconstruction process may provide the basis for a claim by the purchaser under the theory of breach of implied warranty of habitability.
NOTES
[1] Id. at 295, fn. 5.
[2] There was no breakdown as to the value of the building lot as compared to the structure. Under these special circumstances, one could infer that a substantial portion of the purchase price was attributable to the land and very little to the building.
[3] A powder post beetle ("lyctus opaculus") is a very small wood destroying insect of the lyctidae family. The descriptive common name is derived from the fine, powder-like excremental product which is left behind as the insect eats through wood.
[4] The possibility that an implied warranty of habitability or workmanship runs from the subcontractors, as opposed to the builder-vendor, to the purchaser of a new house was discussed in Juliano v. Gaston, 187 N.J. Super. 491, 494-496 (App.Div. 1982). That issue was not decided because it was not pleaded. One panel of the Appellate Division decided that a trial court's reliance on a theory of implied warranty in connection with the sale of a new house was not justified. There, however, the condition complained of, curtilage vegetation, posed no threat to the safety of occupants or the habitability of the premises. See Campbell v. Randville Constr. Co., 172 N.J. Super. 93 (App. Div. 1980).
[5] Strict liability has been imposed in the sale of used personalty. In Realmuto v. Straub Motors, 65 N.J. 336 (1974), a used car dealer sold a 1965 automobile in 1970 to plaintiff who drove it for six days and 140 miles before the accelerator stuck. Rebuilding the carburetor permitted the inference that the defect existed while in defendant seller's control. The Supreme Court affirmed the Appellate Division which had reversed the dismissal of the action. See also Turner v. Int'l. Harvester Co., 133 N.J. Super. 277 (Law Div. 1975).