221 N.J. Super. 79 (1987)
533 A.2d 986
JAMES AND KAREN GLAUM, PLAINTIFFS-APPELLANTS,
v.
BUREAU OF CONSTRUCTION CODE ENFORCEMENT, NEW HOME WARRANTY PROGRAM, DEPARTMENT OF COMMUNITY AFFAIRS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 1987.
Decided November 6, 1987.
*80 Before Judges J.H. COLEMAN and STERN.
Einhorn, Harris & Platt, attorneys for appellants (Michael J. Rowland on the letter brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; Susan Doppelt LaPoff, Deputy Attorney General, on the brief).
The opinion of the court was delivered by J.H. COLEMAN, P.J.A.D.
This is a case of first impression which requires us to decide whether a rehabilitated house is a "new home." Plaintiffs-homeowners have appealed from a final decision of the Commissioner *81 of the Department of Community Affairs (Commissioner) holding that their substantially rehabilitated home was not eligible to participate in the New Home Warranty Program under the New Home Warranty and Builders' Registration Act (Act), N.J.S.A. 46:3A-1 et seq., because the house they purchased was not a "new home." For the reasons which follow, we hold that "new home" means entirely new. Consequently, we affirm the Commissioner's final decision.
The house involved in this appeal is located at 127 Valley Drive, Rockaway Township, in Morris County. The property was sold to Douglas Kessel, later referred to as the builder, in March 1983. In August of the same year he transferred title to his girl friend, Candy McManus, whom he later married.[1] The consideration for this transfer was $1.00. Because the house had been damaged severely in a fire, Kessel as a builder applied to various sub code officials for building, electrical and plumbing permits to "repair a fire damaged house." A building permit was issued on August 17, 1983 and the plumbing and electrical permits were issued later.
Plaintiffs contracted on October 8, 1983 to purchase the premises from McManus and all construction was to be completed prior to closing of title. The contract obligated McManus "to provide at the time of closing a homeowner's warranty insurance policy for the benefit of the purchasers." After the work had progressed to a certain point, the township issued a Certificate of Continued Occupancy on January 31, 1984 to McManus as owner and Kessel as builder and agent. This certificate described the construction work as "alteration to house." By deed dated February 6, 1984, "Candy A. McManus, now known as Candy A. Kessel," transferred title to the house to plaintiffs for the consideration of $119,900. The deed states that "[T]he within premises are a new dwelling *82 never used as a marital abode of the grantor."[2] Plaintiffs were given a Certificate of Participation in the New Home Warranty Security Fund by Kessel as builder. This Certificate of Participation had been validated by the Bureau of Construction Code Enforcement/New Home Warranty Program (Agency) within the Department of Community Affairs on January 30, 1984.
The day following the closing plaintiffs submitted to the builder a list of items which needed to be corrected, repaired, or finished. A second list of defects was sent by plaintiffs to Kessel on April 17, 1984. Not having received a satisfactory response from Kessel, plaintiffs filed a notice of claim with the Agency on June 15, 1984 for the defects in the home. A report prepared by Paul Beck Associates, structural engineers, described numerous defects, some of which were structural in nature. The Agency conducted a conciliation meeting at the premises on August 6, 1984 and a consensus was reached as to all the repairs which had to be completed by September 30, 1984. Kessel did not make the repairs as promised so plaintiffs notified the Agency respecting all defects that had not been corrected.
On October 12, 1984 the Agency notified plaintiffs that its investigation revealed that plaintiffs had purchased a home which had been rehabilitated following major fire damage and that the home was not a "new home" within the contemplation of N.J.S.A. 46:3B-1 et seq. and N.J.A.C. 5:25-1 et seq. The warranty issued by Kessel was therefore cancelled. Plaintiffs then requested a hearing before the Office of Administrative Law. While a hearing was pending, plaintiffs filed a complaint in the Law Division, Morris County, against Douglas Kessel, Candy Kessel, a/k/a Candy McManus, Ralph Labenz (Attorney), and the State of New Jersey, Department of Community *83 Affairs, Bureau of Construction Code Enforcement, New Home Warranty Program, alleging, among other things, a cause of action under the Act. The Office of Administrative Law placed the matter on an inactive list pending disposition of the complaint filed in the Law Division. On August 2, 1985 the Attorney General obtained a dismissal of the complaint "with prejudice as to defendant State of New Jersey, or in the alternative summary judgment is granted as to defendant State of New Jersey, except that Plaintiffs' claim that the Agency erroneously determined that the house in question was not a new home is dismissed without prejudice on the ground of lack of jurisdiction."
After the partial dismissal of the complaint, a hearing was conducted before Administrative Law Judge R. Jackson Dwyer based on joint stipulated facts. The ALJ issued his initial decision on August 29, 1986 affirming the decision of the Agency. The Commissioner adopted the initial decision of the ALJ as his final decision. This appeal followed.
The pivotal question presented in this appeal is whether the home plaintiffs purchased was a "new home." For purposes of the Act, a "new home" is defined to mean "any dwelling unit not previously occupied, excluding dwelling units constructed solely for lease." N.J.S.A. 46:3B-2d. N.J.A.C. 5:25-1.3, which was promulgated pursuant to the Act, defines "new home" in the exact terms of the statute except it expressly excludes mobile homes constructed pursuant to 42 U.S.C. § 501 et seq. A Homeowner's Booklet prepared by the Commissioner pursuant to his regulatory authority provided in N.J.S.A. 46:3B-3a, states that the warranty "does not apply to remodeled or rehabilitated homes...." [at p. 4]. A copy of the Homeowner's Booklet was supposed to have been distributed to plaintiffs by the builder at the time the Certificate of Participation was delivered to them. Id. at p. 1. The Commissioner should, however, amend N.J.A.C. 5:25-1.3 to incorporate the *84 above quoted language because the Homeowner's Booklet is not contained within the regulations.
Plaintiffs contend they should be afforded coverage under the Act because their home is the functional equivalent of a "new home" articulated in Licciardi v. Pascarella, 194 N.J. Super. 381, 387 (Law Div. 1983). Plaintiffs' reliance on Licciardi is misplaced because it dealt with the common law and not statutory interpretation. Defendant counters by arguing that plaintiffs bought a rehabilitated home for which the Legislature did not intend the protection afforded by the Act. The ALJ heard and rejected the Licciardi argument advanced by plaintiffs. The ALJ stated:
It is more helpful to discuss the unique facts of this matter rather than to discuss in the abstract the statutory definition of a "new home" together with the functional equivalency test set forth in Licciardi. From my examination of Exhibit Q-2 "Existing Plan" I see existing concrete block walls, an existing window location, an existing floor joist, and an existing fireplace and chimney. There is a real difference between a home that is almost completely gutted and shelled as in Licciardi, and a home that has a chimney and fireplace, an intact foundation, and some first-floor framing as in the instant case, especially when one of the alleged defects listed in the report of Paul Beck Associates is that "a large vertical crack has formed at the junction of the chimney and the new frame." There is also a notation on that report that "deflection of the floor joints has created voids under the bathroom tile on both levels." There are defects in the joining of the old home and the new construction. The very issue the agency fears it cannot regulate has come to pass in this case.
I CONCLUDE that I would be broadening the purpose of the Act to accept petitioners' arguments that this is a "new home." The Act is designed to protect the integrity of the new home owner from the new home builder. It is not the intent of the statute to cover remodeled, or what is referred to in the building trade as "gut rehabilitated", housing, i.e., housing in which every part of the house is knocked down except the shell. Petitioners' home is a substantial remodeling of a preexisting house.
I further have no hesitation stating that due deference is owed to the agency which administers the Act. It would be substantially impossible to regulate remodeled or rehabilitated houses. The agency would never know how the remodeling related to the former construction. For example, how could the agency with any certitude resolve a dispute in a remodeled or rehabilitated house about plumbing or electrical work. From the agency's perspective, the regulation of old, remodeled or rehabilitated housing would be technically difficult, if not impossible, resulting in a disharmony of the agency's statutory obligations. The agency correctly feels that this is an area it should not be involved in under the Act.

*85 Finally, I believe that the "functional equivalency test" cited by petitioners and set forth in Licciardi is misplaced. The "functional equivalency test" deals with the theory of the breach of implied warranty of habitability, a common law concept developed through case law. This concept has nothing to do with the Act and does not aid in a determination as to what is a "new home." Even if I were to assume that some type of "functional equivalency test" does not apply, this is clearly not the case for such a test. Enough of petitioners' home remained standing after a fire to make this home, in the ALJ's opinion, a remodeled or rehabilitated home and not a "new home" within the contemplation of the Act.
We fully concur in the reasoning of the ALJ, which was adopted by the Commissioner, that plaintiffs' home was not a "new home." We accord substantial deference to the administrative agency's interpretation of a statute it is charged with implementing. State, Dept. of Environmental Protection v. Stavola, 103 N.J. 425 (1986); Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 93 (1973).
Additionally, we note that the record reveals more of the old structure was utilized than plaintiffs admit. The previous structure's foundation was utilized, rather than the "basement's foundation." The ceiling of the basement and floor of the first level was utilized also. The floor of the deck was maintained in its entirety and existing guard rails and steps were maintained and extended. While the first page of the site plans submitted clearly state that all existing construction above the floor of the first level (not the ground level) was to be demolished (with the exception of the chimney) and two new levels built thereupon, the second floor plan directs the builder to match the slope of the eaves with the "existing roof."
The record does not reveal the condition of the surviving and incorporated parts of the previous structure. In addition to the observations of the ALJ, the structural engineer's report prepared for the conciliation meeting is quite revealing. It states that:
[t]he kitchen floor [which rests on the existing ground floor ceiling] exhibits one of the worst settlements through the house.... The extensive weight of the kitchen fixtures was apparently more than the flooring joists can handle and consequently the floor deflected with the resulting popping of most floor tiles. A proper repair of this area would consist of removal of the sheetrock in the *86 basement, placing additional floor framing, and reinstalling the floor tiles. The existing 2 X 8 framing spanning approximately 13 feet, can only support a load of 47 pounds per square foot. Since a residential live load is 40 pounds per square foot, only seven pounds is left for dead load. The existing dead load is well in excess of that seven pounds. In addition, the doubled 2 X 8 beam is by calculation, overstreed. [sic]
The report also notes that deflection of the floor joist has created voids under the bathroom tile on both levels. According to the site plan the floor joist on the lowest level is part of the previous structure. These observations indicate that the surviving first floor utilized in the reconstruction was too weak.
We perceive no legislative intent in the Act to extend the protections afforded to new home buyers to remodeled or rehabilitated houses. See N.J.S.A. 46:3B-1 et seq. The Agency has expressly rejected remodeled and rehabilitated houses from the program in its Homeowners' Booklet. We think "new home" within the meaning of the Act means entirely new. See Grand Chester Assoc. v. Taxation Div. Director, 6 N.J. Tax 336 (1984) which interpreted N.J.S.A. 46:15-5. The Act's requirement that the home not be previously occupied contemplated an entirely new house. To include remodeled or rehabilitated homes within the purview of the Act would require builders of such homes to register with the State as new home builders and warrant their construction. See N.J.S.A. 46:3B-1 et seq. Such an application of the Act is indeed contrary to the State registration system designed exclusively for builders who construct homes that are entirely new. See N.J.S.A. 46:3B-5. Moreover, such an interpretation would also extend the State's warranty coverage to portions of an existing home that pre-date the "new" construction. This result would render meaningless the requirement of "not previously occupied," and the warranty time limitations set forth in the Act. See N.J.S.A. 46:3B-2d; N.J.S.A. 46:3B-3b, N.J.S.A. 46:3B-2h. It would also distort the legislative intent by warranting defects which could have been caused by construction occurring prior to the passage of the Act.
*87 We are also persuaded that neither title nor possession to the home was transferred from the builder to the homeowners as required by N.J.A.C. 5:25-3.1a, which provides that a warranty "shall be provided by any and all new home builders for all new homes for which title is first transferred from builder to owner, or for which possession or occupancy is first given by builder to owner, on or after July 1, 1979." [Emphasis added] As we noted previously, title was transferred from "Candy A. McManus, now known as Candy A. Kessel" to plaintiffs. Douglas Kessel was the builder but he was not the vendor. We interpret N.J.A.C. 5:25-3.1a to mean that only when the builder first transfers title or where the builder-owner gives possession for the first time can the new home qualify for the warranty. Thus, passage of title from homeowner to homeowner rather than from builder-vendor to homeowner does not qualify the home for warranty protection under the Act.
Finally, plaintiffs argue that the Agency should be estopped from denying coverage under the Act because the Agency failed to conduct any investigation before issuing the warranty. We must reject this argument. Estoppel against a public agency is disfavored. Skulski v. Nolan, 68 N.J. 179, 198 (1975); O'Malley v. Department of Energy, 212 N.J. Super. 114, 123 (App.Div. 1986), certif. gtd. 107 N.J. 34 (1986). But even if it were not, plaintiffs have not demonstrated any misrepresentation or concealment by the Agency or any justifiable reliance on the Agency to conduct an investigation sooner. These are basic to an estoppel argument. See Foley Machinery Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75-76 (App.Div. 1986). Plaintiffs' reference to insurance law to support their estoppel argument is misplaced. Unlike the business of insurance which deals with risk allocation, the Act is designed to administer a fund for the benefit of new home buyers who have been damaged by unscrupulous and/or insolvent builders.
*88 Based on our careful study of the record, we are satisfied that plaintiffs were properly denied coverage under the New Home Warranty Program. The decision of the Commissioner was neither arbitrary, capricious nor unreasonable and is well grounded in the record. Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1953); Close v. Kordulak Bros., 44 N.J. 589, 599 (1965); State v. Johnson, 42 N.J. 146, 161 (1964).
Consequently, we affirm.
NOTES
[1] We have not been able to verify the marriage through the appellate record.
[2] If McManus and Kessel were married at the time of this conveyance, the first page of the deed, which is all that was provided us, does not indicate that Douglas Kessel joined in the conveyance.