241 N.J. Super. 323 (1990)
575 A.2d 20
SOMERS ASSOCIATES, INC., A NEW JERSEY CORPORATION, AS AGENT FOR PINE RUN REALTY ASSOCIATES, PINE RUN ASSOCIATES, PINE RUN LIMITED, PINE RUN VILLAGE ASSOCIATES, COLLECTIVELY TRADING AS VILLAGE OF PINE RUN APARTMENTS, PLAINTIFF-RESPONDENT,
v.
GLOUCESTER TOWNSHIP, COUNTY OF CAMDEN, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND GLOUCESTER TOWNSHIP RENT STABILIZATION BOARD, AND VILLAGE OF PINE RUN TENANTS ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 1990.
Decided May 18, 1990.
*325 Before Judges KING, BAIME and KEEFE.
Peter J. Bonfiglio, III argued the cause for appellant Gloucester Township (Higgins, Slachetka & Long, attorneys; Peter J. Bonfiglio, III, on the brief and reply brief).
Samuel Mandel argued the cause for respondents.
The opinion of the court was delivered by KING, P.J.A.D.
*326 After rebuilding 25 fire-damaged units in its apartment complex, the owner-landlord sought a rent increase for those units. Under Gloucester Township's rent control ordinance, a landlord may set rents for new units without regard to the limits of the ordinance. The landlord-owner claimed that the renovated units qualified as new units. The Rent Stabilization Board agreed with the owner but the Township Council did not and reversed on appeal. The Law Division judge reversed the Council, agreeing with the Rent Control Board's construction that these were new units. The judge also agreed with the landlord-owner that two sections of the ordinance concerning administrative appeals of rent increases were unconstitutional on equal protection and due process grounds. The Gloucester Township Council appeals on both issues. We agree with the Gloucester Township Council that the judge was wrong on both the constitutional and the ordinance-construction issues. We reverse.

I
Plaintiff, Somers Associates, Inc., was the managing agent of an apartment complex in Gloucester Township called the Village of Pine Run Apartments. In two fires, in 1984 and 1985, 25 of its 699 units were damaged. Plaintiff totally reconstructed the 25 damaged units. Plaintiff claimed that its renovations "in many cases reconfigured and upgraded the type and quality of the apartment units."
In April 1987 plaintiff applied to the Gloucester Township Rent Stabilization Board (Board) for a "periodic increase" in rents for the apartment complex. With regard to the 25 reconstructed units, plaintiff argued that they qualified as "new units" and were not subject to the rent-increase limitations of the Township's rent-stabilization ordinance. On May 5, 1987, after conducting hearings on the application, the Board agreed with plaintiff that the rentals for the 25 units could be *327 based upon the ordinance's guidelines for initial rental of new units.
The Village of Pine Run Tenants Association (Association) appealed the Board's decision to the Gloucester Township Council. By resolution of September 14, 1987, the Council reversed the Board's decision on the ground that "renovated or reconstructed units" could not, as a matter of law, qualify as "initial rentals" under the ordinance.
When plaintiff at first refused to comply with the Council's ruling, the Board filed a municipal court complaint in order to compel plaintiff's compliance. The record does not establish whether the municipal court issued any type of order. In any event, plaintiff eventually obeyed the Council's resolution, but brought the present action by filing a Law Division complaint in lieu of prerogative writ, seeking (1) a declaratory judgment that the restored units qualified as "initial rentals" under the exemption clause of the ordinance, and (2) a declaration that several sections of the ordinance were unconstitutional. Gloucester Township filed an answer denying the key allegations and asserting a series of technical defenses. The Board filed an answer disclaiming any stake as a defendant in plaintiff's suit. Though named as a defendant, the Association apparently took no part in the prerogative-writ action and does not participate on appeal. While the Board actually participated in the Law Division proceedings, it has filed a letter of nonparticipation on appeal.
Plaintiff moved for summary judgment. The Law Division judge found that the Board had correctly ruled that the 25 rehabilitated units constituted "initial rentals" under the ordinance. In addition, the judge agreed with plaintiff that several administrative appeal provisions of the ordinance were unconstitutional because they violated the landlord's due process and equal protection rights. The judge stayed his constitutional ruling pending appeal.
The appeal concerns four discrete issues:

*328 1. Did the judge err in striking down several administrative appeal clauses in the rent-control ordinance on due process grounds?
2. Did the judge err in also striking the same administrative appeal clauses on equal protection grounds?
3. Did the judge err in invalidating the ordinance provision for a stay pending administrative appeals?
4. Did the judge err in rejecting the Township Council's interpretation of the "initial rental" clause of the ordinance?

II
Gloucester Township disputes the trial judge's holding that two provisions of § 68-10.1 of the rent stabilization ordinance are unconstitutional. First, we treat the judge's due process theory of invalidation.
In issue are two clauses of that section of the ordinance governing appeals to the Township Council from decisions of the Board. First, tenants, but not landlords, are given a right to appeal. "Any interested tenant may appeal to the governing body any final decision of the Rent Stabilization Board approving any application for rental increases exceeding the limit (4 1/2% annually) set forth in § 68-4A." § 68-10.1A. There is no right of appeal by either party from any other kind of Board decision, such as a denial of an increase or a grant of an increase of an amount within the percentage limits of § 68-4A. The second clause provides that when a tenant appeals, the Township must pay for the transcript of the hearing before the Board: "Upon the filing of an appeal, the Municipal Clerk shall order preparation of a transcript, the cost of which is to be paid by the Township." § 68-10.1C. The Law Division judge ruled that these provisions were a "clear violation of the due process and equal protection rights of the landlords."
The ordinance under attack is a rent control measure, which our courts have classified as legislation within a local government's police power. Orange Taxpayers Council, Inc. v. Orange, 83 N.J. 246, 254, 416 A.2d 353 (1980); Hutton Pk. Gardens v. West Orange Town Council, 68 N.J. 543, 555-556, 350 A.2d 1 (1975). As such, it is "subject to the same narrow *329 scope of review under principles of substantive due process as are other enactments under the police power: could the legislative body rationally have concluded that the enactment would serve the public interest without arbitrariness or discrimination?" Hutton Pk., 68 N.J. at 563-564, 350 A.2d 1. Rent control ordinances, like other legislative acts, are presumed to be constitutional. Orange Taxpayers, 83 N.J. at 256, 416 A.2d 353. To overcome this presumption a party challenging such an ordinance must carry the "heavy burden" of showing that the municipality knew of no set of facts "which would rationally support a conclusion that the enactment is in the public interest." Hutton Pk., 68 N.J. at 564-565, 350 A.2d 1. A reviewing court "will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which the legislative body might have made." Id. at 565, 350 A.2d 1. "Even if a court cannot ascertain the actual purpose of the statute, it should sustain the statute if it has any conceivable rational purpose." Matter of C.V.S. Pharmacy Wayne, 116 N.J. 490, 498, 561 A.2d 1160 (1989). Likewise, a reviewing court should approve the means selected to achieve the legislative purpose "unless those means are so irrelevant as to be irrational." Ibid.
In supporting its ordinance against plaintiff's due process challenge, Gloucester Township first argues that the "tenants only" appeal clause comports with the rational basis test. We have searched without success for cases in which an ordinance or statute gave a right to appeal, at the local level in an administrative process, to only one of the contending parties. There is substantial case law to the effect that due process and equal protection require that, if a State chooses to provide a system of appeals from court decisions in civil cases, it may not give the right of appeal to some litigants while denying that right to others. See, e.g., Lindsey v. Normet, 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36, 52-53 (1972); Lynk v. La Porte Superior Court No. 2, 789 F.2d 554, 565 (7 Cir.1986). The right of appeal is not, however, a necessary ingredient to *330 due process, In re Logan, 70 N.J. 222, 228, 358 A.2d 787 (1976), nor is it a "fundamental right" for the purposes of equal protection analysis. United States v. Avendano-Camacho, 786 F.2d 1392, 1394 (9 Cir.1986).
Gloucester Township relies on Pennell v. San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). There, the rent control ordinance allowed a tenant to demand a hearing before a hearing officer if the landlord wanted to increase the rent above the ordinance's stated limit of 8%. Among the factors which the hearing officer was allowed to consider was "hardship to the tenant." An association of landlords attacked this provision as facially violative of the due process and equal protection clauses of the Fourteenth Amendment, reasoning that alleviating individual tenant hardship at a particular landlord's expense was not a permissible governmental goal. See Property Owners Assn. of N. Bergen v. Tp. of N. Bergen, 74 N.J. 327, 338-339, 378 A.2d 25 (1977).
The Court rejected the landlords' due process claim, ruling that the ordinance "represents a rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return on their investment." 485 U.S. at 13, 108 S.Ct. at 858.
Gloucester Township argues that the "tenants only" appeal clause also represents a rational attempt to balance these interests. The Township says: "This balance is struck by giving tenants the right to appeal in only a limited situation, i.e. when the Rent Stabilization Board grants a landlord an increase greater than the annual limit. No other appeal to Council, whether by landlord or tenant, is available under the Ordinance." Pennell offers us no direct help in evaluating the "tenants only" appeal provision, since no such appeal restriction was at issue in that case. Pennell is, however, of interest to the extent that it supplies a general test to be applied in assessing any specific clause of a rent control ordinance: Does *331 it reasonably balance the competing legitimate interests of tenants and landlords?
The invalid aspect of the appeal clause, in the landlord's view, is that "the Landlord's only remedy is a suit in lieu of prerogative writs" in the Law Division court, and "not through the administrative process." The landlord says this denies substantive due process:
[Gloucester Township] asserts that the Ordinance balances competing interests but fails to show that that concept is intended or accomplished by the Ordinance's discriminatory practice. This discriminatory treatment would have to be found by the Court to be "rational" and within the permissible police power of the State, namely the promotion and protection of public health, safety and welfare. Defendant failed to convince the trial Court that the discrimination was rational or promoted the public interest other than the promotion of public officials looking for Tenant votes....
In order to withstand plaintiff's attack, there need only be some conceivable basis for the Township's decision to fashion its appeal system in the way that it did. While under no "due process" obligation to allow appeals to Council at all, the Township could reasonably have decided, as it did, not to allow appeals by any party from most of the possible kinds of decisions by the Rent Stabilization Board. The Township decided to allow appeals in one case only  where the Rent Stabilization Board approves a landlord's application for a rent increase exceeding the percentage limits of § 68-4A. The Township precluded appeals by landlords from denials of rent increases and by tenants from grants of increases within the specified percentage limits. Notwithstanding these limitations, the ordinance does acknowledge "the right of any party to obtain a review by any court of competent jurisdiction according to law," § 68-10.1H. See R. 4:69, "Actions in Lieu of Prerogative Writs," Pressler, Current N.J. Court Rules, Comment R. 4:69 at 1098 (1990).
The Township's decision to favor tenants procedurally in this particular way might have been motivated by its desire to achieve the traditional "primary purpose" of rent control: the protection of tenants, usually with fixed or limited incomes, *332 from burdensome impairments of their standard of living. Pennell, 485 U.S. at 13, 108 S.Ct. at 858. Further, the Township also might have been motivated by its perception that landlords would have the resources to pursue effectively a judicial remedy, whereas tenants would be more in need of a simpler administrative appeal route within the Township.
The Law Division judge felt that it was fatal that the Township "may have been" motivated by "political reasons to gain favor from tenants." He deemed "such favorable treatment" to be "a clear violation of the due process and equal protection rights of the landlords." We think the judge went too far in ruling that a desire to favor tenants procedurally perforce violated due process. Governing bodies often, if not usually, adopt legislation for political reasons. Political animus does not, in itself, invalidate an enactment. Moreover, protection of tenants is indeed "a primary purpose of rent control"; no less an authority than the United States Supreme Court, per Chief Justice Rehnquist, has held that the aim of avoiding financial hardship to tenants, even at some expense to landlords, is a legitimate one. Pennell, 485 U.S. at 13, 108 S.Ct. at 858. The talisman is that there must be some showing that the municipality attempted to balance the competing interests, i.e., that the favorable treatment of tenants does not result in denial of a "fair return" to landlords. Ibid. In the case before us there has been no demonstration that the "tenants only" appeal clause is so financially onerous to landlords that it will deplete or eliminate "fair return."[1]
*333 We next turn to the due process challenge to the provision requiring the Township to pay for the transcript of the Board's hearing upon a tenant's appeal to the Council. Plaintiff's position is that this clause unduly favors tenants: If landlords must appeal through their only available remedy of filing a prerogative-writ action in the Law Division, they must pay for the transcript; but when tenants appeal to Council, the Township provides the transcript for them free of charge.
Defendant-township counters this way, saying that the transcript provision
is rationally related to legitimate interests. The transcript is for the use of Council in rendering its decision. Copies of the transcript are available to both the tenant and the landlord for their use. There is no different treatment between landlords and tenants in this regard. Plaintiff argued, and the trial court relied on the proposition, that if plaintiff filed a prerogative writ action it would be required to pay the cost of the transcript preparation. While this is true, the same is true if a tenant were to file a prerogative writ action and not seek appeal to the Council. Again, the treatment of both classes would be identical.
Once again, this clause must be upheld if there is any conceivable rational basis for requiring the Township, instead of the tenants, to pay for the transcript of the Board hearing. We think the clause is justifiable for the same reason the "tenants only" appeal clause was: The Township could have perceived that in order to achieve the legitimate goal of safeguarding tenants against excessive rent increases, it had to provide them with an easy, inexpensive appeal procedure. The *334 Township could have concluded that the general public interest would be disserved by erecting a substantial financial barrier to potentially valid appeals. Plaintiff landlord has not shown us that this indirect financial benefit to tenants precludes landlords from obtaining a "fair return." The Pennell test of due process constitutionality is met if the scheme "represents a rational attempt to accommodate the conflicting interests of protecting tenants from burdensome rent increases while at the same time ensuring that landlords are guaranteed a fair return of their investment." Id. at 13, 108 S.Ct. at 858. Under the Pennell test, we think that the clause rationally balances the competing interests.

III
Gloucester Township also contends that the court erred in declaring the two clauses violative of the federal and state equal protection guarantees. Equal protection claims under the Fourteenth Amendment are evaluated under one of three analytical tiers, depending on the level of scrutiny required by the interest at stake. Matter of C.V.S. Pharmacy Wayne, 116 N.J. at 501-502, 561 A.2d 1160; Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989). Classifications which impair "fundamental rights" or which create "suspect" categories are subject to "strict scrutiny": The legislation must further a compelling state interest and there must be no less restrictive means of fulfilling that objective. Brown, 113 N.J. at 573, 552 A.2d 125. An enactment which creates "semi-suspect" classes receives "intermediate scrutiny," which tests whether the classification is "substantially related to the achievement of an important governmental objective." Ibid. All others need only meet the "rational basis" test  that the classification bears some rational relationship to a legitimate state interest. Ibid.
Where equal protection is claimed under the New Jersey Constitutional analogue (Art. I, par. 1), our Supreme Court rejects the "tiered" analysis and adopts a "more flexible balancing *335 test." Barone v. Department of Human Services, 107 N.J. 355, 367-368, 526 A.2d 1055 (1987).[2] This test asks "whether there is an appropriate governmental interest suitably furthered by the differential treatment." Id. at 368, 526 A.2d 1055, quoting from Bor. of Collingswood v. Ringgold, 66 N.J. 350, 370, 331 A.2d 262 (1975), app. dism. 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 826 (1976). Weighed in the balance are (1) the nature of the affected right, (2) the extent of the intrusion on it, and (3) the public need for the intrusion. 107 N.J. at 368, 526 A.2d 1055. "The crucial issue in each case is `whether there is an appropriate governmental interest suitably furthered by the differential treatment' involved." 107 N.J. at 368, 526 A.2d 1055, quoting Ringgold, 66 N.J. at 370, 331 A.2d 262. In all cases, New Jersey requires that there be "a real and substantial relationship between the classification and the governmental purpose which it purportedly serves." 107 N.J. at 368, 526 A.2d 1055, quoting Taxpayers Assn. of Weymouth Tp. v. Weymouth Tp., 80 N.J. 6, 43, 364 A.2d 1016 (1976), app. dism. and cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
Gloucester Township correctly observes that the rent-control ordinance under review, which effectively creates two classes (landlords and tenants), does not involve suspect or semi-suspect classification. Hence, under Federal law, it is subject to the lowest level of scrutiny, the rational basis test. Pennell, 485 U.S. at 14, 108 S.Ct. at 859.
In urging that the tenants' right of appeal and transcript clauses meet the "rational basis" test, the Township again looks *336 to Pennell. There the Court rejected the equal protection attack on the San Jose rent-control ordinance:
In light of our conclusion above that the Ordinance's tenant hardship provisions are designed to serve the legitimate purpose of protecting tenants, we can hardly conclude that it is irrational for the Ordinance to treat certain landlords differently on the basis of whether or not they have hardship tenants. The Ordinance distinguishes between landlords because doing so furthers the purpose of ensuring that individual tenants do not suffer "unreasonable" hardship; it would be inconsistent to state that hardship is a legitimate factor to be considered but then hold that appellees could not tailor the Ordinance so that only legitimate hardship cases are redressed. [485 U.S. at 14, 108 S.Ct. at 859.]
The same may be said of the clauses under attack here. They treat landlords and tenants differently "because doing so furthers the purpose of ensuring that" tenants are able to obtain prompt and inexpensive review of what may be excessive rent increases. It would be inconsistent to hold that there is a rational basis for the clauses under due process standards, but that such differential treatment of landlords and tenants violates Federal equal protection guarantees.
We also conclude that the requirements of our State's equal protection guarantee have been satisfied here. While the threetier approach to equal protection analysis under Federal law and our equal protection analysis under the New Jersey Constitution will often yield the same result, "there may be circumstances in which the state constitution provides greater protections." Barone, 107 N.J. at 368, 526 A.2d 1055. We find that any greater standard of protection afforded by the New Jersey Constitution has been satisfied in this case. Gloucester Township's interest in providing tenants with prompt and inexpensive review of what may be excessive rent increases "is an appropriate governmental interest suitably furthered by the differential treatment" engendered by the challenged ordinances. Barone, 107 N.J. at 368, 526 A.2d 1055.

IV
Next Gloucester Township contests the judge's ruling that the automatic-stay provision of the ordinance is confiscatory and invalid. The clause in issue reads as follows:

*337 F. An appeal to the governing body shall stay all proceedings in furtherance of the action in respect to which the decision appealed from was made, including the implementation of any rent increase.
The Law Division judge found that the stay provision was "unfair." He adopted the reasoning of plaintiff's motion brief, which said:
Furthermore, the stay constitutes a deprivation of the landlord's constitutional right to receive a fair rate of return and an illegal subsidy to the tenants. Ironically, this matter could have been cured easily by the township providing in its ordinance for an escrow to be collected by the landlord for the difference in rent, pending a determination of the appeal by the township council.
In addition to satisfying procedural due process and equal protection standards, a rent-control ordinance must be non-confiscatory in order to pass constitutional muster. Hutton Pk., 68 N.J. at 565, 350 A.2d 1. "The test for confiscation is whether the ordinance permits an efficient landlord to obtain a `just and reasonable' return on his property." Troy Hills, 68 N.J. at 620, 350 A.2d 34. The "just and reasonable" test is not defeated simply because the regulation "may incidentally cause the value of the property to be reduced" because the rate of return is not as high as the landlord might obtain elsewhere, or because it may "work hardships on landlords in atypical situations." Hutton Pk., 68 N.J. at 569-570, 350 A.2d 1. The return should, however, be commensurate with returns on investments of comparable risks. Id. at 570, 350 A.2d 1. "Determination of what level of return is `just and reasonable' involves evaluation not only of the interests of the investor but also of the interests of the consumer and of the general public sought to be advanced by the regulatory legislation." Ibid.
A confiscatory impact may be either facial or "as applied." Orange Taxpayers, 83 N.J. at 256, 416 A.2d 353. Here, no evidence was adduced as to how the stay provision, in fact, impaired the landlord's ability to recover a fair return. Nor does plaintiff on appeal assert such an impairment. In order to make such a showing, plaintiff would have had to prove by "clear and convincing evidence that the ordinance had a widespread confiscatory impact upon efficient landlords." Helmsley *338 v. Borough of Fort Lee, 78 N.J. 200, 218, 394 A.2d 65 (1978), app. dism. 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979). Thus, we read plaintiff's theory as being that the clause is confiscatory on its face, the test for which is whether it is "so restrictive as to facially preclude any possibility of a just and reasonable return." Hutton Pk., 68 N.J. at 571, 350 A.2d 1. Accord, Orange Taxpayers, 83 N.J. at 256, 416 A.2d 353. Only the most "drastic" restriction on a landlord's return will qualify as being facially confiscatory. Hutton Pk., 68 N.J. at 571, 350 A.2d 1 (giving examples).
The facial defect in the stay provision of this ordinance, plaintiff contends, is that it deprives the landlord of the increase already granted to him by the Board until the tenant's appeal to the township has been resolved. This in effect compels the landlord to subsidize his tenants during the interim, which subsidization has been condemned by case law.
In reply, Gloucester Township correctly points out that the cases on which plaintiff relies addressed ordinances which limited rents to an amount less than that necessary to provide a fair return. See Property Owners Assn. of N. Bergen v. Tp. of N. Bergen, 74 N.J. 327, 336, 378 A.2d 25 (1977); Cromwell Assoc. v. Mayor and Council, 211 N.J. Super. 462, 470, 511 A.2d 1273 (Law Div. 1985). In contrast, the Township contends, the stay provision in issue in this case does not place limits on rents or increases; rather, "it simply maintains the status quo pending review by Township Council."
Plaintiff's argument assumes that as soon as the Board grants a rent increase, the landlords have acquired a vested right to it so that any delay in charging the higher rate constitutes an automatic denial of a fair return. As the ordinance is drafted, however, the Board's grant of a rent increase is just the first step; tenants are given a right to appeal and the governing body may reverse, affirm, or modify the Board's decision. Hence, it cannot be said that there is any final disposition of the rent-increase request until the Township has resolved the tenants' appeal at the Council level. We cannot *339 conclude that the delay in implementation of a rent increase granted at the initial level of the approval process perforce precludes "any possibility of a just and reasonable return." Orange Taxpayers, 83 N.J. at 256, 416 A.2d 353. The minimal and temporary delay in the increase of rent receipts falls short of the requisite "drastic" restriction. Hutton Pk., 68 N.J. at 571, 350 A.2d 1.
As we understand this ordinance, an appeal must be resolved within 75 days unless the landlord approves additional delay. § 68:10.1A & B. An appeal to Council stays implementation of any rent increase. § 68:10.1F. Any substantial delay in the appeal process, especially where a large number of units, here as many as 699, are involved, may naturally tend towards a confiscatory situation. This is true where the landlord, by virtue of the delay, later loses reasonably substantial amounts of rents which it otherwise deserves to get. Since delay can lead to an unsettling, confiscatory result, an ordinance provision with interim rent increase collection held in interest-bearing escrow pending the resolution of the appeal would be the wiser course. But we do not, as judges, compel the wisest legislative choice, only the constitutional choice. See Jersey City v. DEP, 227 N.J. Super. 5, 17-18, 545 A.2d 774 (App.Div.), certif. den. 111 N.J. 640, 546 A.2d 551 (1988). See also Harry's Village, Inc. v. Egg Harbor Twp., 89 N.J. 576, 587, 446 A.2d 862 (1982). We hold only that on this record the stay provision of the ordinance is not facially confiscatory, even though implementation of the stay provision in a particular situation well may produce a confiscatory result. See Mayes v. Jackson Tp. Rent Leveling Bd., 103 N.J. 362, 381-382, 511 A.2d 589 (1986); Park's v. Hazlet Tp. Rent Control Bd., 107 N.J. 217, 221, 526 A.2d 685 (1987).

V
The final issue is whether the rebuilt units qualified as "initial rentals" within the meaning of § 68-7.
Before amendment in 1988, § 68-7 section read:

*340 The landlord of a dwelling being rented for the first time shall not be restricted in the rent charged for such dwelling. Any subsequent rent increases, however, shall be subject to the provisions of this ordinance.
The January 11, 1988 amendment added a list of dwellings which could not be considered first-time rentals, among which was "[a] dwelling that has been remodeled or renovated due to fire or other type of casualty." By means of this amendment, the Township expressed and codified its interpretation of the ordinance at that time of the pre-amendment version of § 68-7. The issue is whether that interpretation relates to the units damaged in the 1984 and 1985 fires which were the subject of the 1987 rent increase application.
Preliminarily, there is a potentially dispositive theory not mentioned by the parties or the trial judge: the "time of decision" rule, which provides that when an ordinance is amended after the initial administrative or trial court decision, the appellate court should generally apply the amended form of the ordinance. Riggs v. Long Beach Tp., 101 N.J. 515, 521, 503 A.2d 284 (1986); Kruvant v. Mayor & Council Tp. of Cedar Grove, 82 N.J. 435, 440-442, 414 A.2d 9 (1980). One application of this rule obtains where a municipality revises an ordinance "in order to perfect a legislative policy decision therein expressed by it but imperfectly so," Urban Farms, Inc. v. Franklin Lakes, 179 N.J. Super. 203, 220, 431 A.2d 163 (App.Div.), certif. den. 87 N.J. 428, 434 A.2d 1099 (1981), or where a statute is amended "merely to carry out or explain the intent of the original statute." Kendall v. Snedeker, 219 N.J. Super. 283, 287, 530 A.2d 334 (App.Div. 1987).
In this case the Township ostensibly amended the ordinance to cover the unanticipated and unexpressed circumstances which occurred, namely, the renovation of destroyed units. The amendment arguably did not alter existing rights or create any new ones; rather, it simply expressed the Township's original intent in enacting § 68-7.
Even without resorting to the "time of decision" rule, we think the Township's 1987 or pre-amendment construction of *341 the ordinance must be upheld. In its application to the Rent Stabilization Board plaintiff sought to prove that its units were "first-time" rentals, in order to avoid the rent restrictions in the ordinance. The Board agreed, finding as follows:
Due to fire-caused damage beyond the control of the applicants, certain units at the complex, specifically 18A through and including 21F, were completely renovated and remodeled, including totally new electrical wiring, plumbing, drywall, carpeting, appliances and all other amenities found in units, due to being substantially new units, are considered to be, under the ordinance, new units coming onto the market for the first time.
The Board concluded: "The twenty-four (24) fire-damaged units (18A through and including 21F) are new units coming onto the market for the first time, due to the complete and total renovation that occurred therein." In its resolution the Board accepted plaintiff's proposed new-rentals concept of the fire-damaged units, "due to their complete and substantial renovation as totally new dwelling spaces."
In September 1987, after hearing oral argument and considering the record of the hearing before the Board, the Township Council disagreed and reversed the Board's decision. The Council's conclusion was based not on the facts concerning the degree of renovation but rather, on its interpretation of law. It said:
NOW, THEREFORE, BE IT RESOLVED by the Township Council of the Township of Gloucester that the decision of the Rent Stabilization Board insofar as the matter of the 25 burned out units, be and is hereby reversed, on the grounds that the question is a legal issue involving an interpretation of Section 68-7 of the Ordinance, which only provides for initial rentals for new complexes and not for renovated or reconstructed units.
BE IT FURTHER RESOLVED that the rent for the 25 burned out units should be given the percentage increase that was granted to other units, based upon the allowable rents approved by the Board, and upon whether the units are Class A or Class B.
The Law Division judge disagreed with the Township Council and chose to defer to the Board's approach:
It is the feeling of this court that the Rent Stabilization Board did have the facts before it and that when it found an interruption of some two or more years or two years plus, along with the extensive changes which were made, constitutes a finding by that body that this did cause those units to constitute initial rentals, that board was best in a position to make such a finding.
*342 In this appeal Gloucester Township asserts that the Township's interpretation of its own ordinance is entitled to substantial deference by the courts. The Township contends that it is best qualified to interpret its own ordinance.
Where an ordinance is clear on its face, a reviewing court may reverse an interpretation by the governing body which conflicts with the plain language. Phila. Outdoor v. N.J. Exp. Auth., 221 N.J. Super. 207, 214, 534 A.2d 77 (App. Div. 1987), app. dism. 114 N.J. 470, 555 A.2d 598 (1989). See Sullivan v. Zebley, ___ U.S. ___, ___-___, 110 S.Ct. 885, 896-898, 107 L.Ed.2d 967, 986-987 (1990) ("the Secretary's approach to child disability is `manifestly contrary to the statute,' ... and exceeds his statutory authority.") In the present case, the Township obviously failed to contemplate, in the drafting of the ordinance originally, the precise circumstances which arose, i.e., where existing units were damaged and rehabilitated under a different design. Hence courts are free to construe the ordinance according to the probable intent of the drafter. "Where the drafters of a statute or ordinance did not consider or contemplate a specific situation, a court should interpret the enactment `consonant with the probable intent of the draftsman "had he anticipated the situation at hand."'" Matlack v. Burlington Cy. Bd. of Chosen Freeholders, 194 N.J. Super. 359, 361, 476 A.2d 1262 (App.Div. 1984), certif. den. 99 N.J. 191, 491 A.2d 693 (1984).
Because the "initial rentals" clause originally did not address renovations after fire damage (a gap filled by the 1988 amendment), the clause was ambiguous as applied to these facts. In carrying out the task of divining "probable intent," therefore, we are required to give great weight to the interpretation by the Township Council, which drafted the ordinance and which was the administrative body charged with its enforcement. See De Vita v. Housing Authority of City of Paterson, 17 N.J. 350, 357, 111 A.2d 497 (1955); Am. Natl Bank & Trust v. Presbyterian Homes, 148 N.J. Super. 465, 475, 372 A.2d 1147 (App.Div. 1977).
*343 Indeed, a court must defer to the administrative body's construction of an ambiguous measure if it is a "permissible" or "reasonable" one, even if the court might have preferred a different reading. Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 843 n. 11, 844, 104 S.Ct. 2778, 2782 n. 11, 2782, 81 L.Ed.2d 694, 703 (1984); P.R. Maritime Shipping Auth. v. Valley Freight Sys., 856 F.2d 546, 552 (3 Cir.1988). In the words of the federal Supreme Court,
The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding. [Chevron U.S.A., 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11.]
Hence, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." Id. at 844, 104 S.Ct. at 2782.
In this case the Township chose to read § 68-7 in 1987 as referring to "new complexes" only, not to "renovated or reconstructed units" as well. We think this was one reasonable interpretation. Indeed, as noted, the Township codified this interpretation in the 1988 amendment, which expressly excluded dwellings that had "been remodeled or renovated due to fire or other types of casualty." Even if that amendment does not govern our interpretive effort here, an amendment may be persuasive as to the intent behind the original legislation. State v. Bey, 112 N.J. 45, 101, 548 A.2d 846 (1988); Matawan Borough v. Monmouth Cy. Tax Bd., 51 N.J. 291, 299-300, 240 A.2d 8 (1968); State v. Jones, 188 N.J. Super. 201, 209, 457 A.2d 37 (App.Div. 1983).
The Township's own interpretation has an added advantage, in our view: It is more consistent with the announced public policy of protecting tenants. Under the Board's approach, owners of renovated units would be free to charge what the market would bear, without having to present the documentation required by the ordinance. Under the Township's view, in contrast, landlords would be subject to percentage limitations on increases and to documentation requirements. Under this *344 view, landlords are not left wholly unprotected; they are free to present proof that their expenses in repairing and operating the restored units justify a larger increase. For example, the ordinance allows proof of "Major repairs and costs", § 68-4B(3)(f)(3)(c), and capital expenses, § 68-4B(3)(f)(4) and (5).
The Board's contrary interpretation, arguably, was equally reasonable. But the controlling point is that we are required to accept the Township's position as long as it is reasonable. We should not substitute our own judgment and conclude that the Board's outcome was necessarily the preferable one.
The Township draws a persuasive analogy from Glaum v. Bureau of Const. Code Enf., 221 N.J. Super. 79, 533 A.2d 986 (App.Div. 1987). At issue in Glaum was whether a home which was rebuilt after being severely damaged in a fire was a "new home" within the meaning of New Jersey's New Home Warranty and Builders' Registration Act. The Commissioner of the Department of Community Affairs had ruled that the home was not "new" and therefore not eligible for the statutory warranty program. In an opinion by Judge Coleman, we deferred to the agency's interpretation. Id. at 85, 533 A.2d 986. We adopted the administrative law judge's statement of the Act's purpose, which was adopted by the Commissioner:
The Act is designed to protect the integrity of the new home owner from the new home builder. It is not the intent of the statute to cover remodeled, or what is referred to in the building trade as "gut rehabilitated", housing, i.e., housing in which every part of the house is knocked down except the shell. Petitioners' home is a substantial remodeling of a preexisting house. [Id. at 84, 533 A.2d 986]
The point is that we "accord substantial deference to the administrative agency's interpretation of a statute it is charged with implementing." Id. at 85, 533 A.2d 986.
Reversed.
NOTES
[1] The 6-2 Pennell decision upheld a San Jose Ordinance which facially favored tenants confronted with hardships from rent increases in excess of 8%. In his dissent, Justice Scalia, joined by Justice O'Connor, relied on New Jersey authority to denounce the majority opinion authored by the Chief Justice. Scalia said:

[The] fostering of an intelligent democratic process is one of the happy effects of the constitutional prescription  perhaps accidental, perhaps not. Its essence, however, is simply the unfairness of making one citizen pay, in some fashion other than taxes, to remedy a social problem that is none of his creation. As the Supreme Court of New Jersey said in finding unconstitutional a scheme displaying, among other defects, the same vice I find dispositive here:
"A legislative category of economically needy senior citizens is sound, proper and sustainable as a rational classification. But compelled subsidization by landlords or by tenants who happen to live in an apartment building with senior citizens is an improper and unconstitutional method of solving the problem." Property Owners Assn. v. North Bergen, 74 N.J. 327, 339, 378 A.2d 25, 31 (1977).
I would hold that the seventh factor in § 5703.28(c) of the San Jose Ordinance effects a taking of property without just compensation. [485 U.S. at 23-24, 108 S.Ct. at 864.]
[2] The phrase "equal protection" does not appear in our State Constitution, which instead provides in Article I, paragraph 1, that "[a]ll persons are by nature free and independent, and have certain natural and inalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."