DANIEL PARKS, SR., DANIEL PARKS, JR., AND JOHN HOLDEN, PARTNERS, TRADING AS HOLLY HILL MOBILEHOME TERRACE, PLAINTIFFS-RESPONDENTS, v. TENANTS ASSOCIATION OF HOLLY HILL MOBILEHOME TERRACE, DEFENDANT-APPELLANT, AND RENT CONTROL BOARD OF THE TOWNSHIP OF HAZLET, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued June 9, 1986—Decided July 17, 1986.

512

Before Judges MORTON I. GREENBERG, LONG and HAVEY.

*Ronald Schwartz* argued the cause for appellant.

*Christopher J. Hanlon* argued the cause for plaintiffs-respondents (*Gross & Hanlon,* attorneys; *Carole J. Truss* and *Christopher J. Hanlon* on the brief).

Rent Control Board of the Township of Hazlet has joined in the brief filed by appellant Tenants Association of Holly Hill Mobilehome Terrace.

The opinion of the court was delivered by

HAVEY, J.A.D.

In this action in lieu of prerogative writs defendant, Tenants Association of Holly Hill Mobilehome Terrace, appeals from a judgment declaring an operating ratio formula in Hazlet Township's rent control ordinance invalid and granting a rental increase to plaintiffs, Daniel Parks, Sr., Daniel Parks, Jr., and John Holden, partners, trading as Holly Hill Mobilehome Terrace. In entering judgment the trial court found that the operating ratio formula was unconstitutional because it did not measure a just and reasonable return on the value of plaintiffs'

park. It thus made computations based on Hazlet's prior ordinance which permitted rental increases to allow for return on the owner's investment. The trial court, however, applied the present value of the mobile home park instead of plaintiffs' cash investment.

On appeal defendant's principal contention is that the trial court erred in striking down as unconstitutional the operating ratio formula. Alternatively it argues that once the court found that the operating ratio formula was unconstitutional, the matter should have been remanded to defendant Rent Control Board of Hazlet (board) for further fact finding.

Plaintiffs are owners and operators of the Holly Hill Mobile-home Terrace, an 84-space mobile home park on a 7.5 acre tract in Hazlet. Prior to July 5, 1983 section 9-2.9 of Hazlet's rent control ordinance, applicable solely to mobile home parks, permitted the board to grant rental increases:

... upon showing that after deduction of [the owner's] legitimate expenses, including mortgage payments and maintenance, the return on [the owner's] investment is not commensurate with the return on similar properties in the township area, which shall be deemed to be the County of Monmouth, including the Township of Hazlet.

The ordinance also allowed rent increases for major improvements (not to exceed 15% of a tenant's rent), for substantial service or expense increases and for major renovations requiring the expenditure of 40% of the property's assessed value.

In July 1983 the ordinance was amended. Section 9-2.9 permitting rent increases based on a rate of return formula was repealed. Rent increases for capital improvements, major renovations, additional services or increases in taxes and utility charges, were permitted but the rental increase could not exceed 10% of the tenant's rent. Under the amendment the cost of the capital improvement would be pro-rated over its useful life.

On September 23, 1983 plaintiffs filed for a rental increase. They based the application in part on the ordinance as amended seeking "capital improvement" and "expense" increases. How-

ever, since plaintiffs were of the view that the July amendment which repealed the "rate of return" formula was unconstitutional, they also incorporated into their application a request for an additional $75.66 per month per unit increase computed based on a reasonable rate of return on the present value of the park.

While plaintiffs' application was pending, the ordinance was again amended on October 17, 1983. The new amendment permitted hardship increases:

> ... upon a showing that [the owner's] reasonable and necessary operating expenses for [the owner's] last full calendar year exceeded 60% of [the owner's] gross income. If the ... Board is satisfied that such a showing has been established, then the board may grant a rent increase sufficient to restore reasonable and necessary operating expenses to 60% of gross income.

Operating expenses did not include mortgage amortization, mortgage interest or depreciation. Management fees could not exceed 8% of gross income.

Section 9–2.10 of the amended ordinance provided for the granting of an application of rental surcharges for major capital improvements, collectible from tenants in equal monthly installments over the actual useful life of the improvement. Section 9–2.17 permitted a single "automatic" rental increase per year:

> ... equal to the difference between the Consumer Price Index [CPI] not less than 120 days prior to the proposed date of implementation of the rent increase, and the [CPI] 120 days prior to the date of the last CPI increase not to exceed a maximum of 5%.

The CPI increase did not affect an owner's right to other increases permitted under the ordinance. Notice to tenants of the automatic increase was required and if a tenant challenged the increase, a hearing would be held. If the increase was upheld it would be granted retroactive to the original date of implementation.

On November 7, 1983 the board determined that plaintiffs' application was subject to the October 17, 1983 amendment. Plaintiffs thereupon instituted the present action seeking a declaration that the board should not be permitted to apply the

October 17, 1983 amendment retroactively. On December 2, 1983 an order was entered requiring the board to make findings under both the "old" ordinance (pre-July 1983) and the "new" ordinance (October 17, 1983).

After public hearings the board, on April 2, 1984, determined that plaintiffs' "investment" was $160,013 and found that plaintiffs were entitled to a return of $16,801 based on a 10.5% rate under the "old" ordinance. Plaintiffs' request to apply present value figures was denied. The board concluded that plaintiffs were entitled to a $6.87 per month increase to cover income shortfall. It also granted a $2.48 per month increase for 3 years for pro-rated legal and accounting expenses totalling $7,500.

Using the "new" ordinance, the board denied the request for a surcharge for legal and accounting fees and reduced plaintiffs' management expenses $3,354.16 to comply with the 8% cap. It then determined that since actual expenses ($75,222.35) did not exceed 60% of actual income ($153,073) plaintiffs were not entitled to a hardship increase. The board also concluded that plaintiffs' capital improvements were "minor in nature" and thus no capital improvement increase was granted.

On July 13, 1984 a pretrial order allowed amendment to plaintiffs' complaint to assert a constitutional challenge against the October 17, 1983 ordinance as it was applied to plaintiffs' application. At trial plaintiffs' experts testified that the 60% ratio was arbitrary, noting that it may result in a negative cash flow since mortgage interest and amortization were not included in expenses. They stated that the ratio was "capricious" since it may be fair to some landlords and unfair to others, and since it in no way provided for a value-based measure of just and reasonable return. Defendant's expert, on the other hand, justified the operating ratio formula since it guaranteed 40% net income and that actual cash available would increase as gross income increased and as automatic increases provided for under the ordinance were added to the base rent. He concluded

that the 49% net operating income (as found by the board), enjoyed by plaintiffs was "fair and reasonable."

The trial court found that the ordinance "as applied" was unconstitutional because the automatic increase had an "artificial" cap; there was a built-in regulatory lag in the ordinance; there was no retroactivity requirement except for the CPI increase, and there was no requirement for a constitutional just and reasonable rate of return. It then determined that rate of return should be based on the value of the park determined by historical cost which it determined to be $585,136. Applying a 13.5% rate of return it concluded that plaintiffs were entitled to an $8.02 per unit, per month increase.

We reverse. Preliminarily, we note that while the trial court found the operating formula "as applied" was unconstitutional, it made no detailed finding as to how the Hazlet ordinance as a whole was confiscatory as specifically applied to plaintiffs' application. The court essentially adopted plaintiffs' experts' opinion that the operating ratio formula was facially unconstitutional because it was not based on return on value.

■ We have found no reported New Jersey case that supports the trial court's determination that a fair return can only be measured by a rate of return on value. A rent control ordinance must permit the efficient operator to obtain a "just and reasonable" return on his property. *Hutton Pk. Gardens v. West Orange Town Council,* 68 *N.J.* 543, 568 (1975). The regulatory scheme defining "just and reasonable" return need not take a particular predetermined form however, so long as the scheme is not wholly arbitrary and unreasonable. *Id.* at 569.

Operating ratio formulas have historically been recognized as an approach to determine the existence of a fair return. *See Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200, 210–211 (1978), app. dism. 440 *U.S.* 978, 99 *S.Ct.* 1782, 60 *L.Ed.*2d 237 (1979), opinion clarified 82 *N.J.* 128 (1980); *Troy Hills Village v. Parsippany-Troy Hills Tp. Council,* 68 *N.J.* 604, 628 (1975).

The Legislature as well has recognized this approach in the context of rent control. The New Jersey Rent Control Law, *N.J.S.A.* 2A:42–14, *et seq.*, (now expired) permitted rental increases when operating expenses rose above 75% of total income. The act was held constitutional in *Jamouneau v. Harner*, 16 *N.J.* 500, 527 (1954), *cert.* den. 349 *U.S.* 904, 75 *S.Ct.* 580, 99 *L.Ed.* 1241 (1955), the court articulating the underlying policy of the act as accommodating "... the public interest and the landlord's right of private property by the principle of a fair and equitable rental return...." The operating ratio formula was also used in *N.J.S.A.* 2A:42–74, *et seq.*, which empowered governing bodies to regulate rentals on dwelling units which were substandard. While *N.J.S.A.* 2A:42–74 is not directly pertinent here, it evinces, as does *N.J.S.A.* 2A:42–14, a clear legislative intent to measure fair return in terms of net operating income and that a rate of return on value or investment was not constitutionally mandated.

In *Helmsley* the Supreme Court recognized at least three basic approaches to defining fair return: return on fair value; return on investment, and the operating ratio formula. *See* 78 *N.J.* at 210–211. *Helmsley, in dicta,* found value-based criteria for confiscation under rent control to be "practically unworkable" because of the theoretical problems in search for "value" of the rental property. 78 *N.J.* at 215; *see also Troy Hills Village v. Tp. Council of Tp. Parsippany-Troy Hills, supra,* 68 *N.J.* at 634–635 (Conford, J., t/a, concurring).

■ Our task here is not to resolve whether "value-based" criteria after *Helmsley* are conceptually unsound in a rent control context. Of most importance to us is *Helmsley's* use of the operating ratio methodology to determine whether Fort Lee's 2.5% cap on annual rent increases was confiscatory. Noting that the 2.5% cap would limit future increases in gross income after 1976, the court stated:

As a result of the disparity between increases in rents and in operating expenses, the "average" landlord can expect profits to fall for the indefinite

future. *At some point, steady erosion of [net operating income] becomes confiscatory.* [Emphasis supplied; 78 *N.J.* at 222–223].

Recently, our Supreme Court has commented favorably on a maintenance-of-net-operating income (cost-passthrough) formula (closely akin to the operating ratio approach) as being a useful tool for trial courts in evaluating fair return. *Mayes v. Jackson Tp. Rent Leveling Board,* 103 *N.J.* 362, 379 (1986). As it did in *Helmsley,* the court focused on whether the "... ordinance is defeating the purpose of rent control by steadily diminishing income and causing the flight of rental housing from the market...." *Id.* at 381. Steady erosion of net operating income eventually becomes confiscatory. At the point of confiscation, relief would be merited. *Id.* at 380. In our view, the Supreme Court's analysis of the confiscatory nature of the Fort Lee ordinance in *Helmsley* in the context of eroding net operating income as well as its statement in *Mayes* sends a clear message that the operating ratio formula is workable as a rational method of gauging confiscation. *See also Park Tower Apt's Inc. v. Bayonne,* 185 *N.J.Super.* 211, 219–220 (Law Div.1982); *Mahoney v. Hoboken Rent Leveling Bd.,* 178 *N.J.Super.* 51, 57 (Law Div.1981).

■ The purpose of the operating ratio formula is to provide landlords with guaranteed minimum net operating income to apply against debt service. It avoids the circularity associated with return on value standards as well as the inequities of a formula based on fair return on equity which may result in differences in allowable rent due to differing cash investments and financing terms. *See Baar, Guidelines for Drafting Rent Control Laws: Lessons of a Decade,* 35 *Rutger's Law Review,* 723, 804 (1983). The approach captures and passes on to tenants 100% of inflation in expenses and guarantees continuous growth in available cash as gross income increases. In addition it provides local boards with a workable and relatively simple method of gauging hardship in individual cases. In short, it provides a rational means of balancing the economic

interests of the landlord with the tenant's right to affordable housing. *See Hutton Pk. Gardens v. West Orange Town Council, supra,* 68 *N.J.* at 570.

We cannot say from the record before us that the 60%–40% ratio utilized by the ordinance is unconstitutional. A confiscation threshold of 60% of total income was proposed in New Jersey Assembly Bill 504 (1978); *see Helmsley v. Borough of Fort Lee, supra,* 78 *N.J.* at 216. The 60% threshold has generally been accepted as representative of a fair return in most ordinances which apply the operating ratio adopted statewide. *See Baar, supra,* at 723. For example, defendant has cited to us 14 ordinances utilizing the operating ratio approach having a 60% or higher confiscation threshold. Defendant's expert testified that the ratio was sound and workable. *Helmsley* determined that an average 56.7% threshold for highrises in Fort Lee from 1973 to 1976 "... approaching the .600 level deemed confiscatory by Assembly Bill No. 504 . . .", *id.* 78 *N.J.* at 218, did not have a sufficiently confiscatory effect prior to 1976 so as to hold the 2½% rental cap unconstitutional prior to that date. On the other hand no case law has been cited which declares the 60%–40% ratio as being arbitrary.

For the foregoing reasons we uphold the net operating income ratio approach and 60%–40% ratio as adopted by Hazlet in its October 17, 1983 ordinance as a rational approach to measuring fair return. Applying the board's findings as to actual income and expenses, plaintiffs' operating expenses are only 49.1% of actual income, well below the 60% confiscatory threshold. The trial court found that plaintiffs' operating expenses were $81,687.21. Even applying the trial court's expense figures, they do not exceed the 60% threshold under the ordinance. Thus plaintiffs were not entitled to a hardship increase.

Finally, we find no evidentiary basis for the trial court's findings that the 5% CPI cap was "artificial" and that the application process had confiscatory "regulatory lag." The CPI

increase was designed to give annual automatic increases generally parallel to present inflationary trends. There was no evidence presented that the figure was "artificial". While tenants may request a hearing as to the increase, any dispute may be resolved simply by confirmation of the owner's figures and reference to the CPI index, and thus any delay should be minimal. Moreover, automatic increases are retroactive to the original date of implementation and are added to the base rent. Unlike *Helmsley*, where hardship increases expired annually requiring new applications each year, here hardship increases are added to base rent as well. *See Helmsley v. Borough of Fort Lee, supra*, 78 *N.J.* at 227. Thus, any short-term "uncompensated confiscation" arising from the hearing process is minimized. *Id.* at 226.

Reversed.