DANIEL PARKS, SR., DANIEL PARKS, JR., AND JOHN HOLDEN, PARTNERS, T/A HOLLY HILL MOBILEHOME TERRACE, PLAINTIFFS-APPELLANTS, v. RENT CONTROL BOARD OF THE TOWNSHIP OF HAZLET AND TENANTS ASSOCIATION OF HOLLY HILL MOBILEHOME TERRACE, DEFENDANTS-RESPONDENTS.

Argued March 30, 1987—Decided June 11, 1987.

218

*Christopher J. Hanlon* argued the cause for appellants (*Gross & Hanlon,* attorneys).

*Ronald Schwartz* argued the cause for respondent Tenants Association of Holly Hill Mobilehome Terrace.

*Michael J. Gross* argued the cause for respondent Rent Control Board of the Township of Hazlet (*Kenney, McManus & Kenney,* attorneys).

PER CURIAM.

We granted certification, 107 *N.J.* 217 (1986), to consider the plaintiffs' contention that the effect of the judgment below was to hold that the use of a net-operating income ratio in a municipal rent control ordinance foreclosed any further inquiry into the issue of fair return. We agree that a net operating income ratio is but one of the measures that a municipality may employ to guide rent control boards in the discharge of their duties. None, however, can displace the fundamental requirement that a rent control ordinance permit an efficient landlord to realize a "just and reasonable return" on the property. *Mayes v. Jackson Township Rent Leveling Bd.,* 103 *N.J.* 362, 367 (1986) (citing *Helmsley v. Borough of Fort Lee,* 78 *N.J.* 200, 210 (1978), *appeal dismissed,* 440 *U.S.* 978, 99 *S.Ct.* 1782, 60 *L.Ed.*2d 237 (1979)). Thus whatever formula is used, whether it is net operating income ratio, return on value, or any other proposed method, a court must ultimately address whether the actual economic data show a fair return.

■ In this case plaintiffs concede that use of a net operating income ratio does not render a rent control ordinance facially invalid. Nonetheless, plaintiffs' proofs fell short of establishing that the ordinance, as applied, failed to provide the "lowest constitutionally permissible rate." *Troy Hills Village v. Township Council of Parsippany-Troy Hills*, 68 *N.J.* 604, 622 (1975). Their argument was that the formula was inherently arbitrary and thus invalid because it failed to take property value into account when measuring fair return. As one of the witnesses explained, "in some cases [trailer parks] can operate in this formula and in many cases they can't."

The trial court did not predicate its result on the uneven effects of the ordinance. In its view, "[i]n using the 60% ratio of operating expenses to gross income, the ordinance elevates what may be a satisfactory test for an automatic increase to the equivalent of the constitutional mandate of a fair and reasonable return on property * * *." The trial court, however, equated that constitutional mandate with a 13.5% return on the historical cost. It basically used the 1979 purchase price of the trailer park, which figure it regarded as the most reliable evidence of "value of property." (The 13.5% return was derived by averaging a table of rates described by plaintiff's expert as "equivalent [to] the home mortgage.")

Since the trial court found this return was required to avoid a confiscatory result and since the ratio did not generate that return, it held the Hazlet ordinance confiscatory as applied. The Appellate Division reversed, finding no proof of confiscation. It further concluded that on its face the ratio was a rational method of gauging confiscation. 213 *N.J.Super.* 511 (1986). As we noted earlier, however, no formula can substitute for the fact-based inquiry into each plaintiff's rate of return.

In *Mayes, supra,* we recently sustained a 7.5% return on adjusted investment cost, noting that real estate investors would not necessarily expect the same return as those in

fixed-face amount investments, such as mortgages, certificates of deposit or treasury bills, because the "real estate investor has other commercial benefits, including, in some situations, tax shelter and an appreciating asset." 103 *N.J.* at 372.

A better record in future challenges may establish whether the Hazlet ordinance is producing a fair rate of return. That rate of return

> must be high enough to encourage good management including adequate maintenance of services, to furnish a reward for efficiency, to discourage the flight of capital from the rental housing market, and to enable operators to maintain and support their credit. * * * On the other hand [a just and reasonable return] is also one which is not so high as to defeat the purposes of rent control nor permit landlords to demand of tenants more than the fair value of the property and services which are provided.
>
> [*Troy Hills Village v. Township Council of Parsippany-Troy Hills, supra,* 68 *N.J.* at 629.]

In these challenges a court should resolve whether the ordinance defines expenses under the ratio so narrowly as to make nugatory the facial promise of maintaining a steady stream of net operating income. A steadily diminishing stream of actual operating revenue would evidence more than the "long term stagnation of profits" that in itself is a possible basis for finding confiscation. *Helmsley,* 78 *N.J.* at 218. In addition, comparable capitalization rates for such properties could be considered as applied to an investment base or possibly the assessed value of the property. *Cf. Mayes, supra,* 103 *N.J.* at 381 (differing ratios and base rates have been applied).

These are the difficult questions that continue to arise whenever an ordinance hardship increase formula is not achieving its goal of maintaining a viable market for rental housing. An operating ratio that is not rooted in sound economic reality will prove self-defeating. It would be best if this was recognized first at the municipal level. We thus continue to hope that although "[i]t will probably remain necessary to permit constitutional challenges to be mounted in the courts * * * [,] obviously the best record should be made before the rent control

agency, which may resolve many of these issues." *Mayes, supra,* 103 *N.J.* at 377.

With the stated modifications to the Appellate Division opinion, the judgment of that court is affirmed.

*For modification and affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —none.