675 A.2d 645

SCHULMANN REALTY GROUP, A PARTNERSHIP, PLAINTIFF–
APPELLANT, v. HAZLET TOWNSHIP RENT CONTROL
BOARD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 6, 1996—Decided April 23, 1996.

Before Judges MICHELS, BAIME and VILLANUEVA.

*Christopher J. Hanlon* argued the cause for appellant (*Gross, Hanlon, Truss & Messer,* attorneys; *Mr. Hanlon* and *Carol J. Truss,* on the brief).

*Paul A. Stamoulis* argued the cause for respondent (*Mr. Stamoulis,* attorney; and on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Plaintiff Schulmann Realty Group, a partnership doing business under the name Brookside Mobile Estates, appeals from a judgment of the Law Division that dismissed its complaint challenging the decision of the Hazlet Township Rent Control Board (Board) with respect to a hardship rent increase. The Hazlet Board granted plaintiff an increase of $23.89 per month per unit to be paid for five years; thereafter said rent increase would not constitute base rent in any future rent increase applications.

On January 15, 1993, plaintiff, the owner and operator of a ninety-space mobile home park in Hazlet Township, filed an application with the Board, pursuant to subsection 9–2.9 of the

Hazlet Township Rental Control Ordinance (Ordinance), for a hardship rent increase of "$62.94/month/tenant."

On June 21, 1993, following several hearings, the Board passed a resolution granting plaintiff a

> hardship increase in the amount of $23.89 per month per unit which is to be paid for five (5) years from the effective date herein commencing May 1, 1993 and ending April 30, 1998, said sum not to be included in the Landlord's base rent in future rent increase applications after which time the $23.89 per month per unit will be deleted from the tenants' rent.

On July 26, 1993, plaintiff filed its complaint in lieu of prerogative writs against the Board seeking, among other relief, a judgment voiding the Board's 1993 decision. The trial court upheld the action of the Board, finding that the action was not arbitrary, capricious or unreasonable and that a cap of eight percent of the gross income for management fees did not deny plaintiff a just and reasonable return on its investment. On December 22, 1994, the trial court entered an order dismissing plaintiff's complaint with prejudice. This appeal followed.

Plaintiff asserts that (1) the trial court did not follow the correct standard of review in affirming the Board's resolution on its hardship rent increase application; (2) the trial court committed reversible error in upholding the Board's illegal reopening of its decision on plaintiff's 1992 hardship rent-increase application and its modification of that prior resolution; (3) the Board's decision to reduce the bookkeeper's salary without any justification and disallow all of plaintiff's professional fees and costs related to rent control was arbitrary, capricious and unreasonable and resulted in an unconstitutional confiscation and should be reversed; and (4) in order to avoid confiscation of its property, the modifications should be effective retroactively to May 1, 1993.

Plaintiff, therefore, asserts that this court should reverse the trial court's order, exercise its original jurisdiction and make its own findings of fact and conclusions of law, approve the balance of plaintiff's 1993 hardship rent increase for which it had applied and which was denied by both the Board and trial court, and deem the entire 1993 hardship increase a permanent part of the base rent.

## I.

First, plaintiff contends that the trial court erred in affirming the Board's 1993 resolution on plaintiff's hardship rent increase application because the Ordinance does not authorize the Board to designate a hardship increase as temporary or to exclude the increase from base rent.

On October 17, 1983, the Hazlet Township Committee amended its rent control ordinance by adding subsection 9–2.9, which permits a park owner to apply for a hardship rent increase. Upon application therefor and a showing that the owner's reasonable and necessary operating expenses for the preceding full calendar year exceeded sixty percent (60%) of the owner's gross income, the Board may "grant a rent increase sufficient to restore reasonable and necessary operating expenses to sixty percent (60%) of gross income."

Thus, a hardship rent-increase application requires the Board to ascertain the owner's gross income and its reasonable and necessary operating expenses for the preceding full calendar year. The term "gross income" is, in material part, defined as the landlord's "annual income derived, directly or indirectly, from the operation of the mobile home park, including, but not limited to, all rents received."

In the general definitional section of the Ordinance, subsection 9–2.2, the term "reasonable and necessary operating expenses" is defined and explained, in part, as follows:

All expenses incurred and paid by the mobile home park owner to operate the park during the period reflected in gross income computed in accordance with the provisions and limitations of this section. In computing "reasonable and necessary operating expenses," the following limitations shall apply in all cases:

. . . .

d. Repairs and maintenance expenses shall not include expenditures for major capital improvements as defined in this section. Unusual or extraordinary expenses for repairs and maintenance shall be prorated over the time period that the particular expense is not expected to reoccur, not to exceed five (5) years.

e. Purchase costs for new equipment not qualifying as a major capital improvement under this section shall be prorated over the useful life of the item.

The subsection defines "base rent" as follows:

The lawful rent in effect for the mobile home space on August 1, 1975, together with all subsequent base rental increases granted by the Rent Control Board pursuant to this section. The term "base rent" shall not include any amounts granted by the Rent Control Board for capital improvement surcharges, as defined in this section.

Significant to the issues of this case, the Ordinance also permits a landlord to apply for a "rent surcharge" in the form of a "major capital improvement surcharge." However, subsection 9–2.10 provides that any such surcharge granted by the Board "shall be collected by the park owner from the tenants in equal monthly installments over the actual useful life of the improvement, as determined by the Board," and, unlike hardship rent increases, "shall not become a part of the base rent and shall not be included for the purpose of calculating any future rent increase."

In 1993 plaintiff filed its application for a hardship rent increase. The Board found that plaintiff's reasonable and necessary operating expenses for 1992 exceeded 60% of plaintiff's gross income for 1992; therefore, plaintiff was entitled to a hardship increase in the amount of $23.89 per month, per unit. However, the Board ordered that this sum was to remain in effect for only five years and was "not to be included in the Landlord's base rent in future rent increase applications."

After noting that plaintiff "appears to favor a strict construction of the Ordinance," the trial court rejected plaintiff's argument that all hardship rent increases automatically and permanently become part of the base rent. The trial court explained:

The Board's position on this issue seems unambiguous to the court based upon a plain reading of the Ordinance. However, if an ordinance provision is ambiguous, "a court must defer to the administrative body's construction ... if it is a permissible or reasonable one, even if the court might have preferred a different reading." *Somers Assoc. v. Gloucester Twp.*, 241 *N.J.Super.* 323, 34 [343, 575 *A.2d* 20] (App.Div.1990). The Landlord's interpretation as to how it believes the Ordinance is to operate must yield to the construction of the Board in accordance with *Somers*, cited *supra*.

What we actually said in *Somers Associates, Inc. v. Gloucester Township.*, 241 *N.J.Super.* 323, 575 *A.2d* 20 (App.Div.), *certif. denied*, 122 *N.J.* 355, 585 *A.2d* 366 (1990), was that "a court must defer to the administrative body's construction of an ambiguous measure if it is a 'permissible' or 'reasonable' one, even if the court might have preferred a different reading." *Id.* at 343, 575 *A.2d* 20.

Plaintiff argues that there is simply no provision in the Ordinance which authorizes the Board to limit any portion of a hardship rent increase to a temporary time period or to exclude the same from base rent. The Board does not contradict this assertion. Nor does the Board contradict plaintiff's contention that for many years the Board consistently has applied the Ordinance as plaintiff now interprets it. Plaintiff also points out that its interpretation of the Ordinance is consistent with that of Judge Havey in *Parks v. Tenants Ass'n of Holly Hill Mobilehome Terrace*, 213 *N.J.Super.* 511, 517 *A.2d* 1192 (App.Div.1986), *aff'd as modified*, 107 *N.J.* 217, 526 *A.2d* 685 (1987), who stated in *dicta* that hardship rent increases granted under the post-October 17, 1983, Hazlet Township ordinance at issue here are "added to base rent." 213 *N.J.Super.* at 520, 517 *A.2d* 1192.

■ Generally, it would be arbitrary for a municipal rent control board to decline to follow the provisions of its own ordinance. *Mayes v. Jackson Tp. Rent Leveling Bd.*, 103 *N.J.* 362, 376, 511 *A.2d* 589 (1986), *cert. denied*, 479 *U.S.* 1090, 107 *S.Ct.* 1300, 94 *L.Ed.2d* 155 (1987); *see Doric Realty Co. v. Union City Rent Leveling Bd.*, 182 *N.J.Super.* 486, 490, 442 *A.2d* 652 (Law Div. 1981) ("Since the power of the Board derives from the ordinance, it is ... axiomatic that the Board's actions must conform to the requirements of the mandate which is the source of its existence."); *Park Tower Apts. Inc. v. City of Bayonne*, 185 *N.J.Super.* 211, 225, 447 *A.2d* 1359 (Law Div.1982) (Rent control boards must exercise the right to determine rent rebates "in strict conformity with the ordinance.").

A reviewing court may reject an interpretation of an ordinance by the governing body or rent control board which conflicts with the plain language, particularly if the meaning of the ordinance is clear on its face. *Somers Assocs., supra,* 241 *N.J.Super.* at 342–44, 575 *A.*2d 20. Moreover, since the interpretation of an ordinance constitutes a purely legal matter for which an administrative agency has no particular skill superior to a trial court, *Jantausch v. Borough of Verona,* 41 *N.J.Super.* 89, 96–97, 124 *A.*2d 14 (Law Div.1956), *aff'd,* 24 *N.J.* 326, 131 *A.*2d 881 (1957), the usual deference accorded to rent control boards is suspended when the judicial decision to be made involves such interpretation, *Roth v. Rutherford Rent Bd.,* 239 *N.J.Super.* 378, 390, 571 *A.*2d 352 (Law Div.1989).

The formula for determining whether an owner is entitled to a hardship rent increase, applied according to the plain language of the ordinance, is simple. A landlord compiles and tallies a list of his reasonable and necessary operating expenses as defined under subsection 9–2.2 of the Ordinance. Pursuant to subparagraphs (d) and (e) of that definition, unusual or extraordinary expenses for repairs and maintenance and purchase costs for new equipment having an extended useful life may be prorated. The total of all operating expenses, including the prorated unusual expenses, is then divided by 60%. The quotient is the correct gross income figure to which a landlord is entitled. If that figure exceeds the landlord's present gross income, a hardship increase is warranted.

Contrary to the finding by the trial court, "reasonable and necessary operating expenses" and "unusual or extraordinary expenses for repairs and maintenance" are *not* "two opposite terms." Rather, under subsection 9–2.2, the term "unusual or extraordinary expenses for repairs and maintenance" is included within the term "reasonable and necessary operating expenses." In addition, "unusual or extraordinary expenses for repairs and maintenance" are not "like" major capital expenditures.

Nowhere in the Ordinance is the Board authorized to treat reasonable and necessary operating expenses in any fashion other than as in the formula described above. Nowhere in the Ordi-

nance is the Board authorized to make a hardship increase, or any part thereof, temporary, nor is it authorized to exclude such an increase from base rent as that term is defined in Section 9–2.2 of the Ordinance. Yet here, in obvious conflict with the plain meaning of subsection 9–2.2 and its own previous interpretation of the subsection, the Board endeavored to treat plaintiff's extraordinary expenses as though they were capital improvements, *i.e.*, temporary in duration and, therefore, not a part of base rent.

If the drafters of the Ordinance had intended that hardship increases should be temporary where the calculation of "reasonable and necessary operating expenses" includes "unusual or extraordinary repair expenses," they would have so provided, as they did for capital improvement increases. However, they made no such provision. Rather, subsection 9–2.2 defines the term "base rent" as the lawful rent in effect for any mobile home space on August 1, 1975, "together with all subsequent base rental increases granted by the Rent Control Board." Subsection 9–2.2 also provides that the term "base rent" does "not include any amounts granted by the Rent Control Board for capital improvement surcharges." Subsection 9–2.10 designates a capital improvement surcharge a "rent surcharge," and specifies that such a surcharge "shall not become a part of base rent and shall not be included for the purpose of calculating any future rent increase."

By way of contrast, subsection 9–2.9 provides for a "hardship rent increase," and specifies that such an increase is to be granted as "a rent increase." Unlike subsection 9–2.10, the hardship rent increase provision in subsection 9–2.9 contains no specification that a rent increase granted thereunder shall not become a part of the base rent. In this regard, the Hazlet Township rent control ordinance is not unusual. *See, e.g., Kim Real Estate Enter. v. North Bergen Tp.*, 215 *N.J.Super.* 255, 259, 521 *A.*2d 900 (App.Div. 1987).

## II.

Plaintiff also contends that the Board erred by excluding $4,070.04 from its calculations regarding plaintiff's 1993 hardship

rent increase application on the ground that "this prorated expense was not properly part of the expenses for this year's hardship application." We agree with plaintiff.

Because the Board, in considering plaintiff's 1992 hardship application, had required that a $20,350.20 extraordinary expense incurred in 1991 be prorated over five years, the $4,070.04 prorated expense should have been included in the calculation of plaintiff's 1993 hardship rent increase. The trial court did not even address this issue.

In material part, subsection 9–2.2 of the Ordinance provides that "[u]nusual or extraordinary expenses for repairs and maintenance shall be prorated over the time period that the particular expense is not expected to reoccur, not to exceed five (5) years." Given the drafters' use of the word "shall," the Board had no authority under the Ordinance to dispense with the Ordinance's requirement to include $4,070.04 (one-fifth of the total extraordinary expense) when calculating plaintiff's 1992 operating expenses for purposes of its 1993 hardship rent-increase application. The Board clearly erred in its exclusion of $4,070.04 because (1) under the mandatory provisions of the Ordinance, this expense should have been included in the calculation of plaintiff's 1993 hardship rent increase, and (2) the Board's decision to exclude this sum was not based on any provision of the governing Ordinance.

### III.

In the Board's resolution regarding plaintiff's 1993 hardship rent-increase application, based upon plaintiff's on-site manager's alleged misrepresentation of his heat expense, the Board also ordered a rebate and permanent rent reduction to compensate for what it deemed an improper allowance of $916.97 "for heat expense in connection with last year's application, when the proper expense for this item should have been $95.15." Concluding that plaintiff's tenants were therefore entitled to an adjustment, the Board, in its 1993 resolution, ordered a "one-time rebate of $9.88 and a permanent rent reduction of $.76 per month per

unit for the heat adjustment, commencing July 1, 1993." Plaintiff claims that the trial court erred in affirming the Board's modification and amendment of its 1992 resolution since such action was "not authorized by any ordinance, statute or court rule, nor by any existing case law."

It is well established that "administrative tribunals possess the inherent power of reconsideration of their judicial acts, except as qualified by statute." *Handlon v. Town of Belleville*, 4 *N.J.* 99, 106, 71 *A.*2d 624 (1950). Because the power to correct and revise enables governmental agencies to better serve and implement statutory policy, the denial of this authority when exercised "for good and sufficient cause would run counter to the public interest." *Id.* at 107, 71 *A.*2d 624. *See generally In re Kallen*, 92 *N.J.* 14, 24, 455 *A.*2d 460 (1983) ("[A]dministrative agencies have the inherent authority to reopen, modify, or rehear even final orders.").

Although the Board was authorized to re-open the 1992 resolution, it is unclear to us whether there was a factual basis to justify the action. Therefore, a remand is necessary. However, the Board had no authority under the Ordinance to make any hardship rent increase temporary in duration and designate it a part of base rent. Consequently, to the extent that the Board's 1993 resolution modifies the duration and character of the hardship rent increase granted under the Board's 1992 resolution, that part of the 1993 resolution is reversed.

## IV.

Plaintiff also claims the Board erred in reducing from $12,500 to $8,500, without explanation, plaintiff's requested expense for its secretary-bookkeeper's salary.

Benjamin Schulmann testified that in 1992 Anna Schulmann, his wife, performed the bookkeeping services for plaintiff's mobile home park. Schulmann acknowledged that, on plaintiff's 1992 hardship rent-increase application, the Board had approved a 1991

expense of $8,500 for Anna's bookkeeping services. Schulmann also testified that Andrea Morgan used to perform secretarial services for plaintiff's mobile home park, but she had left plaintiff's employ and, therefore, plaintiff had incurred no expenses for Andrea in 1992. Schulmann acknowledged that in plaintiff's 1992 hardship rent increase application, the Board had approved a 1991 expense of $2,000 for Andrea's secretarial services. Finally, Schulmann testified that in 1992 Anna had performed Andrea's duties and, therefore, plaintiff now allocated the $2,000 expense for secretarial services to Anna. Consequently, plaintiff requested the Board's approval of a 1992 expense of $10,500 for Anna's bookkeeping-secretarial services ($8,500 plus $2,000), plus a cost of living increase of $2,000, for a total 1992 expense of $12,500.

There appears to be a good basis to allow at least the additional $2,000 for the secretarial services. However, the Board approved only the salary of $8,500 for bookkeeping, and rejected plaintiff's requested increases. Because the Board's decision on this expense item was made without any explanation, we remand to the Board for articulation of specific fact findings, followed by a reasoned explanation for whatever decision the Board makes with regard to this item.

## V.

Plaintiff contends that the Board's decision to disallow all of plaintiff's professional fees related to its rent control application was arbitrary, capricious and unreasonable; and, therefore, the trial court erred in upholding the Board's decision on this issue. We disagree with plaintiff. We also reject plaintiff's contention that the operating ratio formula in the Ordinance is so complicated that all costs associated with an owner's hardship rent-increase application must be deemed to be reasonable and necessary operating expenses.

Subsection 9–2.2(f) of the Ordinance states:

> Legal and accounting expenses shall be limited to actual costs for the operation of the park. Legal and accounting expenses resulting solely from an application

made pursuant to this section shall not be considered "reasonable and necessary operating expenses" as defined in this section.

Under the Ordinance, the Board had no choice but to disallow all such professional fee expenses. It is not for us to question the wisdom of this subsection. Neither the disallowance of these professional fees nor the failure to make the increases retroactive to May 1, 1993 results in confiscation.

## VI.

Plaintiff claims the Board erred by applying the Ordinance's eight percent cap on management fees to limit plaintiff's management expenses, and claims that such application results in unconstitutional confiscation. Plaintiff argues that the "total expenses that would fall under the Ordinance definition of management expenses" are plaintiff's telephone expense of $2,608.82 pertaining to a phone used exclusively to manage the mobile home park; and the annual salary of $26,000, which plaintiff pays to Benjamin Schulmann for his daily management services.

Subsection 9–2.2 of the Ordinance places the following limitations upon computing reasonable and necessary operating expenses:

> g. Management expenses shall be limited to actual services performed and paid for, including the resident manager's salary, telephone expenses, postage, office supplies, stationary [sic] and the value of the resident manager's mobile home site, if said value is included in gross income. In the case of self-management by a park owner performing management duties from an on-site personal residence, management expenses shall be allocated between moneys expended in the operation of the park and moneys expended for the park owner's personal and household expenses. In no event shall a fee for management services exceed eight percent (8%) of the gross income.

Concluding that a "management fee goes on top of expenses" under the Ordinance, the Board found that plaintiff was limited to the eight percent cap under the ordinance. With regard to plaintiff's "telephone bill," the Board concluded that it had to "throw it all out" and, therefore, omitted this expense in its entirety.

Because the Board found that plaintiff's gross income for 1992 was $279,816.65, it allowed plaintiff a management expense of $22,385.33, *i.e.,* "eight percent ... of the gross income." In other words, while plaintiff had requested an allowance for management expenses of $28,608.82 ($26,000.00 plus 2,608.82), this request was reduced by the Board to $22,385.33 to bring it under the 8% management fee cap.

The trial court found that "no evidence has been presented by the Landlord of a denial of a 'just and reasonable return' overall as the result of the 8% management cap." Therefore, the trial court rejected plaintiff's challenge and ruled that the Board had "properly capped ... [plaintiff's] management fees to 8% of gross income." There is substantial credible evidence in the record to support that finding. *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.2d* 495 (1974).

We believe that there is not any real distinction between a "fee for management services" and a "resident manager's salary." Both are management fees or expenses and are included within the definition of reasonable and necessary operating expenses. As a consequence, both expenses would be subject to the eight percent cap of the gross income.

However, other management expenses not covered by this eight percent cap include telephone expenses incurred to operate the park. Thus, plaintiff's telephone expenses of $2,608.87 are management expenses not subject to the cap on fees for management services. If such expenses are reasonable and necessary, they are allowable. We, therefore, remand to the Board to decide whether these telephone expenses are reasonable and necessary.

## CONCLUSION

We affirm the application of the eight percent cap on management fees and the denial of professional fees. We reverse the Board's decisions (i) limiting the duration of the rent increases to five years, (ii) excluding the $4,070.04 prorated expense from the

prior year, and (iii) disallowing telephone expenses of $2,608.87. Because several issues require additional fact findings and calculations by the Board, this matter is remanded to the Board for further proceedings consistent with this opinion. We do not retain jurisdiction.