**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5516-18T3

BISHOP PROPERTY
MANAGEMENT and
MAGNOLIA MANAGEMENT,

     Plaintiffs-Appellants,

v.

THE CITY OF JERSEY CITY
RENT LEVELING BOARD,

     Defendant-Respondent,

and

MARIE CALLE, DANUTA
DMOCHOWSKI, GREGORY
HODGKINSON, NANCY
HOLGUIN, ANDREA JEREZ,
HEMAL PATEL, JOSE PINERO,
JOSEFINA RESTITUYO,
and VITO SERRIPIERRO,

     Defendants/Intervenors-
     Respondents.

_____

Submitted September 21, 2020 – Decided November 9, 2020

Before Judges Hoffman, Suter and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0602-19.

Miller, Meyerson & Corbo, attorneys for appellants (Gerald D. Miller, on the briefs).

Peter J. Baker, Corporation Counsel, attorney for respondent (Cheneise V. Wright, Assistant Corporation Counsel, on the brief).

Gibbons PC, attorneys for intervenors-respondents Danuta Dmochowski, Gregory Hodgkinson, Andrea Jerez, and Vito Serripierro (Lawrence S. Lustberg and Michael R. Noveck, on the joint brief).

Marotta & Garvey, attorneys for intervenors-respondents Marie Calle, Nancy Holguin, Hemal Patel, Jose Pinero, and Josefina Restituyo (Neil D. Marotta, on the joint brief)

PER CURIAM

Plaintiffs Bishop Property Management (Bishop) and Magnolia Management (Magnolia) appeal from an August 12, 2019 Law Division order dismissing their complaint in lieu of prerogative writs, which challenged the decision of the City of Jersey City Rent Leveling Board (the Board) denying plaintiffs' applications for hardship rental increases. We affirm.

Bishop owns the property at 234 Beacon Avenue, and Magnolia owns the properties at 27 Concord Street and 3473-3475 Kennedy Boulevard (3475 JFK

Blvd), all in Jersey City. Plaintiffs, in order to "maintain [their rental properties] and make them at least Class B or A rental spaces," between 2017 and 2019, invested $426,839 in maintenance and repairs for the three rental properties. Meanwhile, between 2017 and 2018, the city increased the property taxes on plaintiffs' properties. As a result, the taxes on 234 Beacon Avenue increased approximately 110 percent, from $17,160 to $36,000; the taxes on 27 Concord Street increased approximately seventy percent, from $8,190 to $13,912; and the taxes on 3475 JFK Blvd increased approximately twenty-seven percent, from $18,041 to $22,700.

Due to the increased tax burden, and the amounts spent on repairs and maintenance, plaintiffs filed hardship rental increase applications (hardship applications) with the Board. Bishop filed its hardship application for 234 Beacon Avenue on June 20, 2018, and Magnolia filed its hardship applications for 27 Concord Street and 3475 JFK Blvd on August 17, 2018 and September 12, 2018, respectively. Plaintiffs' applications sought to increase the maximum chargeable rent for the properties' units, claiming the latest tax assessment severely reduced the properties' profitability.

The controlling ordinance for hardship rental increases and plaintiffs' applications, Jersey City Municipal Code (the Code) §260-10, provides:

A-5516-18T3

In the event that a landlord cannot meet his or her mortgage payments or operating expenses <u>or does not make a fair return on his or her investment</u>, he or she may apply to [the Board] for increased rentals, provided that he or she has owned the building for at least nine months prior to the time he or she applies for an increase.

[Emphasis added.]

The Code defines "fair return" as:

The percentage of return on equity of real property investment. The amount of return shall be measured by the net income before depreciation. A "fair return" on the equity investment in real property shall be considered to be 6 [percent] above the maximum passbook demand deposit savings account interest rate available in the municipality.

Further, the Code defines "equity in real property investment" as "[t]he actual cash contribution of the purchaser at the time of closing of title and any principal payments to outstanding mortgages subsequent to acquisition of title by the purchaser." In short, the Code provides that a landlord may apply for a hardship rental increase when the landlord is not earning a fair return on the equity of his property investment. Equity of a property investment is measured by the amount the landlord paid when purchasing the property plus any subsequent mortgage payments made by the landlord.

Despite the Code's language, the hardship application forms provided by Jersey City's Division of Tenant Landlord Relations indicated landlords could calculate the equity of their property investment using the purchase price approach described in the Code or using the property's appraised value. The application defined equity: "Equity in real property is the owner's down payment plus payment on the principal. Where the property has been owned for over 10 years the appraised value less outstanding loans may be used to calculate equity." According to plaintiffs, Jersey City's hardship application forms included these terms since 1990, and the Board granted applications using the appraised value approach for nearly thirty years.

In their hardship applications, plaintiffs used the appraised value approach, rather than the purchase price approach, to calculate the equity of their properties and to determine the fair return amount they claimed they were entitled to receive. Plaintiffs calculated the fair return rate at 6.05 percent of the properties' "net equity," which represented Jersey City's .05 percent passbook demand deposit interest rate at the time, plus six percent. Plaintiffs listed their then-existing profits for the three rental properties: 234 Beacon Avenue showed a $18,072.00 profit; 27 Concord Street showed a $15,355.00 profit; and 3475 JFK Blvd showed a $11,224.00 profit. For 234 Beacon Avenue, based on an

appraisal of $2,450,000, Bishop listed a net equity of $2,003,609, which yielded fair return amount of $121,218. Bishop purchased 234 Beacon Avenue in 1995 for $369,000 with a $500,000 mortgage, of which $446,391 of principal remained owing. Magnolia listed a net equity of $885,000 based on an appraisal of that same amount, resulting in a fair return figure of $53,542.50. Magnolia purchased 27 Concord Street in 1985 for $140,000 without a mortgage. For 3475 JFK Blvd, based on an appraisal of $2,200,000, Magnolia listed a net equity of $2,050,000, which yielded a fair return amount of $124,025. Magnolia purchased 3475 JFK Blvd in 1983 for $350,000 taking out a mortgage of $250,000, of which there remained a balance of $100,000 when the hardship application was filed.

In accordance with these calculations, plaintiffs requested rent increases that amounted to an approximate doubling of their tenants' current rent. For example, the rent of one tenant at 234 Beacon Avenue would have increased from $800 a month to $1,620 a month. Specifically, for 234 Beacon Avenue, Bishop requested an average rent increase of $820; for Concord Avenue, Magnolia requested average rent increases of $665; and for JFK Blvd, an average rent increase of $940 for 3475. The requested rent increases would substantially increase the profitability of each rental property.

Jersey City's Division of Tenant Landlord Relations scheduled a review of plaintiffs' hardship applications before a hearing officer. In advance of the hearing officer's review, counsel for intervenor tenants submitted written objections to plaintiffs' requested rent increases, challenging plaintiffs' use of appraised value to calculate their properties' equity and fair return amount as inconsistent with the Code.

The hearings were held on various dates throughout the fall of 2018, culminating in the hearing officer recommending the approval of the three hardship applications. The hearing officer added the following comment to one of the applications:

> Landlord has filed Application using Appraisal Method and the Attorney for the tenants has objected stating that the Ordinance is correct and the Application is not? [B]ut those are what I depend on to make a Recommendation and he has also submitted a document of objection (a copy is included), if the board request a change to the process then I must receive notification & instruction of such changes in order to comply.

The Board subsequently scheduled a hearing on plaintiffs' hardship applications, and counsel for plaintiffs and counsel for the intervenor tenants provided written arguments on the appraised value issue. At the hearing, held on December 27, 2018, the acting chairman for the Board noted that, in the Code, "'Equity' is defined as an owner's 'cash contribution' plus 'principal payment' to

any mortgage on the property[,]" and that, for the purposes of calculating a fair return, "[a]ppraised value is not 'equity' . . . ." The chairman cast plaintiffs basing their net equity calculation on appraised value as "conceptually unsound in a rent control context," and "counter to the purpose of rent control: Protecting tenants from arbitrarily large rental increases while assuring the preservation of an efficient owner's net operating income."

Because their applications used an inappropriate basis for calculating their equity, the chairman recommended offering plaintiffs two options, which the Board previously offered another landlord in a recent ruling, to enable them to move forward with their hardship applications. First, the chairman stated that if plaintiffs wanted to proceed using equity to calculate a fair return, they could use "present equity as the basis for a fair return by a suitable index for inflation since the date of purchase." Their other option was to base their hardship applications on alternate language in the Code, which "authorizes the Board to adjust rents if a landlord cannot meet his operating expenses."

Just as the Board moved to vote on its decision, plaintiffs' counsel interjected, questioning the Board's authority to adopt new policy and procedure governing hardship rental increases without the approval of city council or enactment through the legislative process. Counsel for the Board responded by

clarifying that it was not creating new law, but rather its decision "represent[ed] a fair interpretation of the existing rent leveling ordinance." Counsel for tenants at 3475 JFK Blvd and 234 Beacon Avenue also briefly spoke on the record to express their support for the Board's recommendations and interpretation of the Code.

At the conclusion of the hearing, the Board unanimously passed a motion accepting the Board chairman's recommendations. Resolutions dated January 10 and 14, 2019, memorialized the Board's decision and were mailed to the interested parties in February 2019. Additionally, the Division of Tenant Landlord Relations provided an accompanying letter with guidance to plaintiffs on how to resubmit their hardship applications in light of the Board's decision.

On February 8, 2019, plaintiffs filed a complaint in lieu of prerogative writs in the Law Division challenging the Board's rejection of their use of appraised value as the basis for the hardship applications. The trial judge granted, with the consent of plaintiffs and the Board, motions to intervene filed by the tenants. The trial judge required the parties to submit briefs on the threshold question of "whether [the Board] may legally reject [p]laintiffs' rent increase applications by refusing to consider market or appraised value of the property." On July 19, 2019, the judge heard oral argument on this issue.

9

On August 12, 2019, the trial judge entered the order under review, dismissing plaintiffs' complaint with prejudice. In his accompanying written opinion, the judge stated that for the purpose of his decision, he assumed, "that the [B]oard had, for a number of years prior to [plaintiffs'] application, evaluated hardship rent increase applications not in accordance with the literal language of [the Code], and instead considered the market or appraised value of the property."

Addressing plaintiffs' arguments, the trial judge first determined that the Board did not act arbitrarily and capriciously in abiding by the express language of the Code. To the contrary, the judge found that the Board accepting plaintiffs' definition of equity would have been an arbitrary deviation from the Code's express language. Next, the judge rejected plaintiffs' argument that basing their equity on appraised value was appropriate because the hardship application form explicitly allowed it as an option. The judge acknowledged the application form did contain this option, but found plaintiffs had

> not shown that [they] somehow relied upon the language of the application form to their detriment in this case. They have owned the property for a good number of years . . . . The Ordinance, which does not reference appraised value, has been in effect since 1983 and therefore provides some type of constructive notice to applicants as to the standard which [the Board] may utilize in connection with these applications.

A-5516-18T3

> Moreover, short of establishing a confiscatory taking, [plaintiffs have] not shown that [they] suffered a significant economic hardship by submitting an application on a form which stated that appraised value may be used in connection with these applications.

The judge further determined that the Board permissibly deviated from the hearing officer's recommendations, as the Code allows the Board to "'accept, reject, or modify' a recommendation of a Hearing Officer[,]" and caselaw also makes clear the Board may reach a different conclusion from a hearing officer when there is substantial evidence supporting the Board's ultimate conclusion. Though the judge dismissed the complaint with prejudice, he explicitly afforded plaintiff's the opportunity to file a separate complaint, raising an inverse condemnation claim:

> The [c]ourt repeats in this [o]pinion what was stated on the record: [p]laintiff may file a separate complaint, naming the City of Jersey City as a [d]efendant if [p]laintiff claims inverse condemnation as a result of a literal reading of [the Code]. The necessary [d]efendant for such a claim is the City, not [the Board], and there will be a need to create a full record, with discovery afforded to all parties to address [p]laintiff's claims.

This appeal followed.

Plaintiffs here argue the Board acted arbitrarily and capriciously by retroactively applying a new standard and policy for hardship applications after plaintiffs submitted their applications. Plaintiffs further argue the Board denied

11

them due process by failing to announce or provide notice of its policy change, failing to provide adequate reasoning for the departure from past policy and practice, failing to articulate specific findings of fact which supported its decision as required by the Code, and denying plaintiffs a fair opportunity to be heard. Plaintiffs also contend that the Board's shift to solely calculating equity according to the Code's plain language was impermissibly confiscatory, and that its directive that inflation may be considered in calculating equity was arbitrary and wanting of a definitive standard.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004). Generally, courts afford the decisions of municipal boards substantial deference, only "set[ting] aside a municipal board decision if it is shown to be arbitrary, capricious, or unreasonable, not supported in the evidence, or otherwise contrary to law." Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 378 (1996). However, like the trial court, we owe no deference to a municipal board's legal interpretations, including its construction of municipal ordinances. See Schulmann Realty Group v. Hazlet Twp. Rent Control Bd., 290 N.J. Super. 176, 184 (App. Div. 1996). We construe an

12

ordinance using the same rules of construction applied in interpreting a statute, applying its plain meaning if the terms are unambiguous. Mays v. Jackson Twp. Rent Leveling Bd., 103 N.J. 362, 376 (1986); Nuckel v. Borough of Little Ferry Plan. Bd., 208 N.J. 95 (2011).

It is well understood that a rent control board is bound to strictly follow the rent control ordinance. Schulmann Realty Group, 290 N.J. Super. at 183. Since the Board's powers derive from the ordinance, its actions are invalid when they exceed the scope and literal language of the ordinance. Knight v. City of Hoboken Rent Leveling & Stabilization Bd., 332 N.J. Super. 547, 551, 554 (App. Div. 2000). Therefore, "[a] reviewing court may reject an interpretation of an ordinance by the governing body or rent control board which conflicts with the plain language, particularly if the meaning of the ordinance is clear on its face." Schulmann Realty Group, 290 N.J. Super. at 184.

Here, the plain language of the Code is unambiguous, providing that when a landlord seeks a hardship rental increase for not receiving a fair return on the equity of a property, equity, and thus the fair return amount, is based on the price paid by the landlord at purchase and any subsequent payments on the mortgage principal, if one is attached to the property. No provision of the Code states that the fair return amount may be based on the appraised value of the property. In

rejecting plaintiffs' attempt to calculate their fair return based on the appraised value of their property, the judge correctly concluded that the Board adhered to the Code as written. In fact, as the judge properly noted, if the Board accepted plaintiffs' method of calculating equity, it would have impermissibly and arbitrarily exceeded the scope of its authority. The judge correctly concluded that the Board's strict adherence to the Code in this matter cannot be considered arbitrary or capricious.

The relevant provision of the Code was adopted in 1983 and has remained unchanged since then. Plaintiffs submitted their hardship applications in the summer of 2018. Plaintiffs therefore cannot argue that the Board's application of the Code's plain language constituted a retroactive application of a new standard adopted after plaintiffs' hardship applications were submitted, nor can plaintiffs convincingly argue they lacked notice of the Code's requirements.

Moreover, even if plaintiffs did reasonably believe, based on the language of the hardship application form, that the Code allowed a hardship applicant to calculate equity using appraised value, the Board provided plaintiffs with proper notice of the Code's actual requirements during plaintiffs' hearing before the Board. During the hearing and in the written communications that followed, the Board informed plaintiffs of its intention to strictly follow the Code's plain

14

language in considering hardship applications. After providing plaintiffs with notice of the requirements an applicant must meet to receive a hardship rental increase, the Board offered plaintiffs the opportunity to amend and resubmit their hardship applications. The Board therefore gave plaintiffs notice of the relevant policy and thereafter provided plaintiffs with the opportunity to submit their hardship applications in conformance with the policy.

Furthermore, the statements of the Board during the December 27, 2018 hearing, as well as the written statements in the letters mailed to plaintiffs in February 2019, provided sufficient explanation and factual basis for the Board's decision. In its communications, the Board made clear that plaintiffs' method of calculating their fair return was contrary to the plain language of the statute and therefore improper.

We agree with the trial judge that the Board did not deny plaintiffs a fair opportunity to be heard. Plaintiffs appeared before a hearing officer on multiple dates resulting in the hearing officer accepting plaintiffs' applications. The Board then held a subsequent hearing concerning the applications and noted that before doing so, "the Board has reviewed of the materials, all of the submissions by the attorneys, including the legal briefs and the reports of the Hearing Officer . . . ." During the hearing, counsel for plaintiffs contested the Board's

15

interpretation of the Code; argued that an objection made by an opposing attorney was untimely; and questioned whether the interpretation would apply retroactively to previous hardship applicants, whether the application form would be amended, and whether a hearing was held to determine the policy's economic impact on long-term property owners.

Because, "[a]t its core, due process requires adequate notice and an opportunity to be heard[,]" Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, (App. Div. 2008), the procedure undertaken by the Board in handling plaintiffs' hardship applications conformed with the requirements of due process. Furthermore, beyond mentioning the costs incurred in preparing their original applications, plaintiffs have not shown that the Board's actions deprived them of any interest or caused them any hardship. There is no indication that plaintiffs were unable to amend their applications and successfully secure a hardship rental increase using either of the two options offered by the Board.

We decline to address plaintiffs' argument that the Board's actions were impermissibly confiscatory. The trial judge dismissed plaintiffs' complaint after hearing arguments solely on the threshold question of "whether [the Board] may legally reject [p]laintiffs' rent increase applications by refusing to consider

16

market or appraised value of the property." In dismissing their complaint, the judge informed plaintiffs that they could pursue an inverse condemnation claim by filing a new complaint against the City of Jersey City, rather than the Board. Indeed, because the Board merely followed its legislative mandate and applied the Code as written, the proper line of attack for a confiscatory taking claim would be against the Code itself. The trial judge's dismissal of plaintiffs' complaint against the Board was therefore appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5516-18T3