**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0115-24

OAK HILL INVESTORS, LLC,

      Plaintiff-Appellant,

v.

HOWELL TOWNSHIP
RENT STABILIZATION
AND CONTROL BOARD,

      Defendant-Respondent.

_____

Submitted October 15, 2025 – Decided October 30, 2025

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-3144-23.

Hanlon Niemann & Wright, PC, attorneys for appellant (Christopher J. Hanlon, of counsel and on the briefs).

Dasti & Staiger, PC, attorneys for respondent (Christopher J. Dasti, of counsel and on the brief; Jeffrey D. Cheney and Brandon E. DeJesus, on the brief).

PER CURIAM

Plaintiff Oak Hill Investors, LLC (Oak Hill) appeals from an August 14, 2024 order dismissing its complaint in lieu of prerogative writs. Plaintiff challenged the decision by defendant Howell Township Rent Stabilization and Control Board (the Board) limiting Oak Hill's 2023 application for a rent increase to 2.5 percent as opposed to the 5 percent rent increase it had requested. We affirm.

## I.

Oak Hill owns a mobile park in Howell Township containing approximately 300 mobile homes and is fully occupied. The property is comprised of streets, pads for the mobile homes, a parking lot, clubhouse, playgrounds, a detention pond, and common areas. Oak Hill's park is an unsubsidized "land lease community," meaning that Oak Hill owns the land, and the tenants purchase and own their own mobile homes. Oak Hill retains a management company, Arcap, LC, which controls all operations related to management. John Henry Jordan (Jordan) is Arcap, LC's director of operations, the managing agent, and "landlord" for Oak Hill's park.

Howell Township has a rent stabilization Ordinance, Township of Howell, N.J., Code § 204 (the Ordinance). Under the Ordinance, owners of mobile home parks must apply for and receive approval for any rent increase. A mobile home

park cannot increase the rent to an amount that exceeds 5 percent of the previous twelve-month base rent for the mobile home space.

Section § 204-4A(1)(c) of the Ordinance provides as follows:

> An amount not to exceed 5 [percent] of the previous twelve-month base rent for the mobile home space. The percentage allowable increase calculated hereunder shall be applied to the tenant's existing base rent. A hearing shall be required as to this increase as provided for hereinafter, at which time the landlord shall present specific reasons supported by any data or information he [or she] chooses to present to support his [or her] request for an increase under this Subsection A(1)(c). Specific reasons shall include, but not be limited to, any increase in the annual consumer price index [(CPI)].

On May 11, 2023, Oak Hill filed an application with the Board seeking a 5 percent cost of living rent increase. The Board initially scheduled a hearing in August 2023, but it was cancelled due to a lack of a quorum. The Board rescheduled and conducted the hearing on September 13, 2023.

### The September 13, 2023 Hearing

At the September 13, 2023 hearing Jordan testified about the current economic circumstances of Howell Township and the current rate of inflation. Jordan spoke to recent increases in prices related to the management and operation of the Oak Hill property, including "increases from vendors," such as the garbage and fuel costs. Jordan suggested the following price increases for

3

the management of Oak Hill:  a 22 percent increase for utility expenses, a 22 percent increase for bulk waste removal costs, a 10 or 11 percent increase for administrative payroll costs, and a 26 percent increase for repair and maintenance expenses.  Jordan recounted rent increases in previous years that Oak Hill had received:  5 percent in 2020, 3 percent in 2021, and 2.5 percent in 2022.  At the time of the hearing, Jordan testified the inflation rate was 8 percent.

Jordan explained that he is responsible for Oak Hill's grounds maintenance, but not for maintenance of the mobile homes themselves or any improvements the owners wish to make on their lots.  Residents are responsible for their water, electricity, and garbage disposal costs.  Jordan provided photographs depicting an exterior improvement program at Oak Hill, including the community facilities in the park.  He also provided photographs of the detention pond, which management maintains.  Jordan further explained that the detention pond collects storm water runoff from the mobile home park, the adjacent public street, and an adjacent multifamily apartment.  Jordan testified as to the aesthetic standards of Oak Hill and provided photographs to compare the well-maintained homes with poorly maintained ones.

Further, Jordan provided a list of examples, supported by an exhibit, of expenses incurred as part of the maintenance responsibilities.  Jordan contended

the documents verify what he referred to as "above and beyond" normal maintenance expenses for cleanup of the detention pond, resident debris cleanup, "tree work," cleanup and repairs for storm drains, concrete sidewalk replacement, and replacements of street signs. Jordan testified regarding "crack fill" and "seal," which are road repair products that have increased in cost from 15 percent to 20 percent year-to-year.

Lastly, Jordan addressed the CPI, which was 3.5 percent at the time of Oak Hill's initial application in May of 2023. He argued that the CPI is a "poor indicator of the true rent inflationary rate." Instead, Jordan asked the Board to compare Oak Hill's average monthly rent to the fair market rental value for the 2023 fiscal year in the Monmouth-Ocean area, which is approximately $2,300 for a three-bedroom unit.

Four residents testified in opposition to Oak Hill's rent increase application. Resident Christine Masnamaro testified the property's sidewalks and streets were in need of repairs beyond mere patchwork and that the park has an issue with graffiti on mailboxes. She stated the graffiti involves obscene pictures of male genitalia and contended management took fourteen months to conceal the graffiti.

A-0115-24

Resident Laura Lopes testified that her monthly rent had doubled during the eighteen years she lived at Oak Hill, from $484 to $829, resulting in her inability to rent the community hall. Lopes testified she has been unable to use her yard for several years due to geese infestation, as they attack her grandchildren, and excrete "thousands of pieces" of feces. Lopes stated the swan decoys and signs posted advising not to feed them are sideways, broken, or do not work. Lopes testified the detention pond is only cleaned twice a year, and she picks up garbage that comes from the drain system at least once a month. Lopes explained she called the Environmental Protection Agency regarding the drain system. Lopes also stated the roads have never been replaced since she has lived there, and her house is situated on an "eroding" hill, with trees that need removal, and broken streetlights.

Sandi Marcinczyk, a five-year resident, testified that the only maintenance Oak Hill provides is grass cutting and trimming of the trees in the common areas. Marcinczyk stated she had to pay almost $1,000 for the removal of trees from her lot, despite not owning the land. Marcinczyk testified the park suffers from rat infestation and that she paid approximately $1,000 for an exterminator. Lastly, Marcinczyk testified about the broken streetlights and graffiti over the sign by Oak Hill's entrance office.

A-0115-24

Resident Melissa Haitcock testified that many lots, including hers, contain storm drains underneath and therefore have issues with erosion. As a result, the land underneath her house is sinking, yet management has done nothing to preserve the land. Haitcock also stated the only time Oak Hill "spray[s] the roads [and] the cracks" is "right before this meeting," or "before they know they have an inspection coming." Multiple other residents also testified that maintenance requests are not acknowledged, and that Jordan is rarely on the property.

After the residents testified, Jordan provided rebuttal testimony. He contended this was the first time he ever heard of the streetlights being broken, but that Oak Hill does not own or service them. According to Jordan, Jersey Central Power and Light manages the streetlights. He contended the rat infestation was a localized issue two years ago, and that issue has been addressed. Jordan countered that, sometimes Oak Hill must pay for pest control to handle rat infestations where the issue was not caused by a tenant. Jordan testified that the mailboxes containing graffiti are owned by the United States Postal Service (USPS), and his understanding is that he cannot legally do anything to the boxes, including painting over them, but he would reach out to USPS to obtain permission to paint the mailboxes.

7

Jordan testified that complaints of garbage piling up are addressed by enforcement notices or by management directly. As to the storm drain, Jordan claimed that Oak Hill and an adjacent apartment complex are in dispute as to who owns the storm drain. Either way, Jordan testified that neither the Township nor the adjacent apartment complex contributes to pond maintenance. Jordan also defended the snow removal clause in Oak Hill's lease, explaining there is no separate charge for the service, and stated the roads were properly treated in the past.

Lastly, Jordan testified how his attempts to address the geese infestation have been unsuccessful. He contends management is restricted in regard to how it can deal with the geese. Jordan stated he has "dealt with this [issue] multiple times," and if he uses services such as scaring them away with dogs, they will return to the pond. Swan decoys have been used, which have either been vandalized or damaged due to high water, although Jordan claimed they "seem[ed] to be deterring significantly the g[ee]se population."

At the conclusion of the testimony, the four-member Board considered Oak Hill's application for a 5 percent rent increase. Board member and chairperson Lara Casper made an initial motion proposing a 2.5 percent rent increase, which was endorsed by fellow Board member Joan Farkas. The

A-0115-24

Board's roll call vote resulted in a 2-2 tie. Board member Cindy Lou Jordan—unrelated to John Henry Jordan—made a motion for the 5 percent increase Jordan originally sought in his application. She then modified her motion down to 4.5 percent, reasoning that Oak Hill should receive the same amount as a nearby property, Winding Brook Mobile Home Park (Winding Brook), had received. Casper and Farkas countered the amount granted to Winding Brook was due to damage caused by a tornado and because they provided additional services most mobile home parks do not provide.

Casper moved again for 2.5 percent increase. The motion was passed by Casper, Farkas, and another Board member, Zina Mattura, 3-1, with Cindy Lou Jordan voting against the motion. As a result, Oak Hill received a 2.5 percent increase in rent with an effective date of August 1, 2023. The next day, the Board passed a resolution memorializing the vote and the 2.5 percent rent increase. The resolution did not set forth factual findings.

The Litigation

On October 5, 2023, Oak Hill filed an action in lieu of prerogative writs in the Law Division. Oak Hill alleged the Board acted contrary to the Ordinance and its decision was arbitrary, capricious, and unreasonable. Oak Hill sought reversal of the Board's decision and a cost-of-living rent increase of 5 percent

9

effective August 1, 2023. On November 14, 2023, the Board filed its answer. The Board's counsel proposed to remand the matter back to the Board to allow for additional factual findings. A week later, both parties consented to remanding the matter back to the Board to conduct a supplemental hearing and provide additional findings of fact and conclusions of law.

<u>The January 31, 2024 Remand Hearing</u>

On January 31, 2024, the Board held the remand hearing. No additional testimony was elicited. The Board's counsel asked the Board members to explain their reasoning for the 2.5 percent increase. The Board at that time was comprised of Cooper, Farkas, and Cindy Lou Jordan. Mattura did not participate because her appointment expired on December 21, 2023.

Casper explained she did not feel "the grounds were kept properly for the amount of money these people [are] paying . . . a [5] percent raise was asking a lot of people on a fixed income and low income." Casper added that the residents' testimony indicated things growing out into the road causing individuals to have to drive around it, and land built with no retaining wall and "as a result, [the] whole floor [wa]s sinking."

Next, Farkas stated that Casper's explanation was "very close to [her] rationale." Farkas did not think the fair market rent was comparable because

10

A-0115-24

that number is relevant to "renting a three[-]bedroom unit[,] not . . . a land pad," whereas here, "[you have] to pay rent [or a mortgage] on top of that for your mobile home." Further, Farkas pointed out "Jordan himself [said] that the CPI is not a good indicator of inflation . . . buildings don't have some of the expenses that go into the CPI. So . . . asking for above the CPI, when technically I would want to pull things out of it and go below the CPI, is . . . also part of what goes into my rationale."

Farkas highlighted, the residents' testimony "was in direct contrast to some of the things that were stated as being expenses that were being maintained" and the "evidence wasn't convincing enough to me to [grant] the [5] [percent]." Farkas provided examples, reasoning there "might have been a more effective means or some other option" to deal with the geese, and that Jordan was not able to identify when he made calls to USPS regarding the graffiti. Farkas opined the overgrown landscaping, cracked roads, and uneven and cracked sidewalks were evidence of poor care and maintenance, "of stuff that [Oak Hil] state[s] [it does]." Both Farkas and Casper found the residents' testimony regarding the detention pond and the streetlights to be credible.

The three Board members then explained their views as to the photographs proffered by Oak Hill. Farkas and Casper found that Oak Hill's submitted

11

maintenance expenses were not evidence of going "above and beyond," but were rather standard maintenance and operating expenses expected of a landlord. Farkas and Casper determined Jordan's testimony involving some of the photographs to be "unpersuasive" because they lacked a timestamp or address.

Cindy Lou Jordan countered that the sidewalks and driveways have huge cracks, but she did not believe a lot of things the residents stated because they were trying to avoid a rent increase. She also did not find the testimony regarding the rats to be credible, reasoning that if there was a massive infestation, everyone would be experiencing issues with rats. Cindy Lou Jordan also thought the mailbox graffiti, and the detention pond issues were not the landlord's responsibility.

The Board then adopted a resolution on May 15, 2024, incorporating its supplemental findings and approving the 2.5 percent rent increase. In the resolution, the Board recognized the CPI for the period of September 2022 to September 2023 was 3.7 percent.

The August 5, 2024 Trial

Prior to the August 5, 2024 trial, the court entered a pre-trial order, which identified the following issues to be decided at trial: (1) whether the Board's denial of Oak Hill's application for a rent increase was unreasonable, arbitrary,

12

and capricious, and (2) whether the Board's resolution approving a 2.5 percent rent increase was based on reasonable and credible evidence in the record. At trial, the court heard opening statements and arguments of counsel. No testimony was elicited, and no items were moved into evidence. Following arguments, the court reserved decision.

On August 14, 2024, the court issued an order denying Oak Hill's application for a 5 percent rent increase and dismissed the complaint. In an accompanying twenty-five-page written decision, the court found the Board did not act "arbitrarily, capriciously, or unreasonably" in denying Oak Hill's application for a 5 percent rent increase and approving a 2.5 percent increase. The court reasoned that Oak Hill sought an increase based on cost-of-living and not on "any hardship or major capital improvement."

The court highlighted that § 204-4(A)(1)(c) of the Ordinance is "silent" regarding how cost-of-living increase applications should be decided. The court analyzed the plain language of the Ordinance and determined it "provides nothing more than a minimum requirement for landlords to satisfy before being eligible to apply for a rent increase." The court observed "minimum evidence" requirements set forth in the Ordinance, which landlords must present to the Board at the hearing. The court concluded the Ordinance permits a landlord to

13

seek a rent increase and provides the procedural requirements for doing so, however, the Board is not required to grant a cost-of-living increase as was applied for here. This appeal followed.

Before us, Oak Hill presents the following arguments for our consideration:

> (1) the record developed before the Board justifies the conclusion that its determinations were arbitrary, capricious, and unreasonable, and this court can reverse those determinations and make its own factual findings; and
>
> (2) since this court can make the determination that the Board's decision was not based on any credible evidence made part of the record, this court should conclude the Board's decision was arbitrary, capricious, and unreasonable, and this court can make its own fact findings to cure the Board's unreasonable determination.

## II.

Courts grant the decisions of municipal boards substantial deference, with a presumption that a rent control board's factual determinations are valid, and that the board has acted "fairly." Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965). Therefore, our review of a municipal board's action "is usually limited," and a reviewing court should not substitute its judgment for that of the board. See Kauffmann v. Plan. Bd. for Warren Twp., 110 N.J. 551, 558 (1988).

14

When reviewing the decision of a trial court that has reviewed a municipal action, we are bound by the same standards as the trial court. Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Properties, L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). On review, the party challenging a board's decision has the "heavy burden" to prove the determinations were arbitrary, capricious, or unreasonable. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 415, 431 (2004).

A decision is arbitrary, capricious, or unreasonable if it (1) violates the law, including express or implied legislative policies, (2) is unsupported by substantial evidence in the record, or (3) in applying the legislative policies to the facts, the board clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995). "Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances." Worthington v. Fauver, 88 N.J. 183, 204 (1982) (quoting Bayshore Sewerage Co. v. Dept. Env't. Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)).

A-0115-24

"Although a municipality's informal interpretation of an ordinance is entitled to deference . . . the meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005) (citation omitted). The trial court's determination as to the meaning of the ordinance is not entitled to any special deference. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002).

Judicial review is intended to be a determination of the validity of a board's action. CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd., 414 N.J. Super. 563, 578 (App. Div. 2010). Courts have found that it is "arbitrary" for a "municipal rent control board to decline to follow the provisions of its own ordinance." Schulmann Realty Grp. v. Hazlet Twp. Rent Control Bd., 290 N.J. Super. 176, 183 (App. Div. 1996). "A reviewing court may reject an interpretation of an [o]rdinance" by the rent control board that "conflicts with the plain language, particularly if the meaning of the ordinance is clear on its face." Id. at 184. These are the same rules of construction courts apply in interpreting a statute—to apply the statute's plain meaning if the terms are unambiguous. Ibid. Mayes v. Jackson Twp. Rent Leveling Bd., 103 N.J. 362, 376 (1986).

A-0115-24

## A.

Oak Hill first contends the court did not give any consideration to the CPI. Oak Hill maintains the court erred because it failed to acknowledge that no facts were presented to justify the 2.5 percent amount, which the Board used to limit the cost-of-living increase. Oak Hill argues the Ordinance "directs" the Board to consider the CPI in § 204-4(A)(1)(c), and the Board gave no consideration to the CPI as of May 2023, or 3.5 percent, in its September 13, 2023 deliberations. On remand, Oak Hill asserts the only "consideration" relating to the CPI was that one of the Board members who voted in favor of the 2.5 percent increase opined the CPI "was not a legitimate consideration" for a mobile park rent control ordinance.

The Board counters that the Ordinance does not entitle Oak Hill to an automatic rent increase in the amount of the "then-existing" CPI rate upon application to the Board. Instead, the Board argues the Ordinance's plain language states the CPI is a consideration but not a determinative factor in a rent increase application. The Board asserts the Ordinance "tethers the reasonableness of a rent increase" to the condition of the property.

When interpreting an ordinance, the first step is to look to the plain meaning of the language. Bergen Com. Bank v. Sisler, 157 N.J. 188, 202 (1999).

A-0115-24

"A statute's meaning is not self-evident, however, where varying interpretations of the statute are plausible." Ibid.; see also Bubis v. Kassin, 184 N.J. 612, 626 (2005). In those situations, the court should look to "judicial interpretation, rules of construction, or extrinsic matters." Bergen Com. Bank, 157 N.J. at 202. The purpose of such interpretation is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." State, Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999) (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)).

"We do not view words and phrases in isolation but rather in their proper context and in relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment." State v. Twiggs, 233 N.J. 513, 533 (2018) (alterations in original) (quoting State v. Rangel, 213 N.J. 500, 509 (2013)). Indeed, we "can . . . draw inferences based on the statute's overall structure and composition," State v. S.B., 230 N.J. 62, 68 (2017), and consider "the entire legislative scheme of which [a statute] is a part," Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987). "We do not support interpretations that render statutory language as surplusage or meaningless." Burgos v. State, 222 N.J. 175, 203 (2015).

A-0115-24

We note again that the Ordinance states a landlord "shall present specific reasons supported by any data or information he [or she] chooses to present to support his [or her] request for an increase," and specific reasons shall include, but not be limited to any increase in the [CPI].  § 204-4(A)(1)(c).  We agree with the trial court that this provision is unambiguous.  Moreover, this provision must be read literally to support the interpretation that the CPI is a consideration but is neither preclusive nor determinative.

Such an interpretation also effectuates the intent of the Ordinance because it advances the pragmatic goal of not automatically entitling landlords to a rent increase in the amount of the CPI at the time the application is made to the Board.  Rather, the Board must consider the condition of a mobile home property in conjunction with its compliance with licensure and state, county, and local codes.  § 204-6.

Accepting Oak Hill's interpretation of the Ordinance would allow mobile park owners to circumvent these necessary safeguards, a result the Township clearly did not intend.  Therefore, we reject Oak Hill's argument that it was entitled to an automatic rent increase in the amount of the CPI at the time the application was made to the Board.

A-0115-24

Given our holding, we see no reason to engage in fact-finding as Oak Hill suggests. We "may exercise . . . original jurisdiction as is necessary to complete determination of any matter on review." R. 2:10-5. "In determining whether to exercise original jurisdiction, an appellate court not only must weigh considerations of efficiency and the public interest that militate in favor of bringing a dispute to a conclusion but also must evaluate whether the record is adequate to permit the court to conduct its review." Price v. Himeji, LLC, 214 N.J. 263, 295 (2013).

In light of the lengthy history of this case both before the Board and the court, and our de novo review of the record, we decline to exercise original jurisdiction and engage in fact-finding. We conclude the court's decision affirming the Board's decision to grant Oak Hill a 2.5 percent rent increase was based upon substantial credible evidence in the record that the Board's decision was not arbitrary, capricious, or unreasonable.

To the extent we have not addressed an argument on appeal, it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division